2002-NMCA-034

43 P.3d 352

Paul LUCERO, Worker–Appellee,

v.

CITY OF ALBUQUERQUE, Self–Insured,
Employer/Self–Insured–Appellant.

No. 21,965.

Court of Appeals of New Mexico.

Jan. 16, 2002.

Certiorari Denied, No. 27,345,
March 14, 2002.

Certiorari Granted, 27,345, May 20, 2002.

**2**

David S. Proffit, Albuquerque, NM, for Appellee.

Robert M. White, City Attorney, Helen L. Stirling, Helen L. Stirling, P.C., Albuquerque, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} In this case, we are asked to determine whether and, if so, how a Workers' Compensation Judge (WCJ) can enforce NMSA 1978, § 52-1-50.1 (1990), which requires an employer, if it is hiring, to rehire an injured worker for his pre-injury job or a modified job similar to the pre-injury job. We hold that the WCJ is vested with authority to order the employer to find work for its injured worker, but that the WCJ may not award a fine or damages for the violation of that statute. However, in circumstances such as those here, where the Worker's claim was based on a demand to rehire him, the WCJ could find that the refusal to do so was an unfair claims processing practice, thereby authorizing the award of a penalty under a different statute. We affirm the WCJ.

## FACTS AND BACKGROUND

{2} Paul Lucero (Worker) worked for the City of Albuquerque (City) as a Wastewater II worker since 1992. He injured his back on August 12, 1999. He received medical care through the City's Employee Health Center and its referrals. In November of 1999, he changed his health care provider to Dr. Barrie Ross. Worker did not work from August 12 through August 23, 1999. He returned to light duty work on August 24, 1999, and worked in that capacity until March 7, 2000. In November of 1999, Dr. Ross released Worker to modified work with no lifting over 20 pounds. Worker did not have surgery on his back and on December 20, 1999, he was found to be at maximum medical improvement (MMI), with a 10% impairment rating. At that time, Dr. Ross

permanently restricted Worker from lifting over 50 pounds and from operating a jack hammer.

{3} Worker's job until March 7, 2000, was a light duty position that he retained until he ran out of his allotted 960 hours of injury time. He was then placed by the City on "physical layoff" status. Since March 7, 2000, the City has not offered Worker any return-to-work position, although the City claims that he has not been terminated from employment with the City. At the time of the hearing on the merits, Worker had been in "physical layoff" status for approximately nine months, without a job assignment or offer.

{4} On March 14, 2000, Worker filed a complaint seeking a return to work at the City in a position within the permanent restrictions placed on him by Dr. Ross. In June 2000, Worker then sought to amend his complaint to include claims for bad faith and unfair claims processing. After a hearing, the WCJ allowed the complaint to be amended to include a claim for unfair claim processing practice pursuant to NMSA 1978, § 52-1-28.1 (1990). The parties prepared and submitted a joint pre-trial order that stipulated to a number of facts, and stated the contested issues as those dealing with the City's obligation to rehire Worker and whether it committed unfair claim processing.

{5} On the morning of the merits hearing, the WCJ added to the pre-trial order several issues that had previously been rejected. Those issues included claims of bad faith, retaliation, and whether the WCJ could impose penalties pursuant to Section 52-1-50.1. After a hearing on the merits, which took place over a period of three days, the WCJ entered extensive findings of fact and conclusions of law. The WCJ ordered the City to find Worker an appropriate modified job and rehire him as soon as possible. The WCJ also awarded Worker a penalty of 25% increase in his benefits for unfair claims processing practice. The City appeals, contending, among other things, that the WCJ did not have the authority to find a violation of Section 52-1-50.1 and order it to find Work-

er a job, and had no basis to award the 25% increase.

## DISCUSSION

### Findings Contrary to Pre-Trial Order Stipulations

{6} The City argues that the findings and conclusions entered by the WCJ were contrary to the stipulations submitted by the parties in the pre-trial order. In particular, the City contends that the WCJ ignored the stipulations regarding Worker's authorized health care providers. We disagree.

{7} In fact, the WCJ adopted the parties' stipulations regarding Worker's authorized health care providers in her findings of fact. Thus, both Dr. Ross and the providers from the City's Employee Health Center were found to be authorized health care providers. The WCJ then elaborated regarding the selection of those providers, indicating that the initial selection of the Health Center was made by the City and that Worker later selected Dr. Ross. These additional findings are not contrary to the stipulations.

{8} It appears that the City's argument against these additional findings is based on its belief that the WCJ ignored the testimony of Dr. Christiansen from the Health Center because the Health Center was not an authorized health care provider. *See* NMSA 1978, § 52-1-28(B) (1987) (causal connection between accident and disability must be shown by expert testimony of a health care provider). There is nothing in the record indicating that the WCJ ignored Dr. Christiansen's testimony. In fact, it appears that the work restrictions placed by Dr. Christiansen on Worker were admitted into evidence. Simply because the WCJ did not adopt those restrictions does not mean that the evidence was ignored. The record shows that there were differing opinions regarding the restrictions on Worker's capabilities. Thus, the WCJ was required to view the different opinions and determine which to believe. *See Gallegos v. City of Albuquerque*, 115 N.M. 461, 464, 853 P.2d 163, 166 (Ct.App.1993) (indicating that the WCJ, not this Court, gets to judge credibility, weigh the evidence, and find the facts based thereon). The fact that the WCJ adopted the restrictions of Dr. Ross does not mean that the WCJ found the

Health Center doctors not to be authorized health care providers. It simply means that Dr. Ross was found by the WCJ to be more credible.

{9} The additional findings of the WCJ were not contrary to the parties' stipulations. Therefore, the WCJ did not err in her findings regarding the authorized health care providers.

### Adding New Issues

{10} The City contends that the WCJ erred when, on the morning of the merits hearing, she added new contested issues to the pre-trial order. Before the hearing on the merits, Worker had sought to amend his complaint to include claims for unfair claims processing, bad faith, and retaliation. He sought the issuance of a Notice of Administrative Enforcement Proceeding for the failure to rehire him. He also sought an award of benefit penalty. The WCJ allowed the complaint to be amended to include the claim of unfair claims processing. The request for a bad faith claim was denied. The order was silent on the claim for retaliation and administrative enforcement of the rehire requirement. On the morning of the merits hearing, the WCJ amended the pre-trial order to include claims for bad faith and retaliation, and notified the parties that she would hear issues relating to the administrative enforcement of the rehire provisions of the statute.

{11} We recognize that, pursuant to the Workers' Compensation Administration's (Administration) rule, all parties are to be bound by the terms and conditions of the pre-trial order and the WCJ can modify the pre-trial order "only as provided by law." N.M. Admin. Code tit. 11, § 4.4.12.11.1.J (2001). However, we fail to see how the City was prejudiced by the addition of the bad faith issue where the WCJ made no findings on bad faith. *Cf. Norwest Bank N.M., N.A. v. Chrysler Corp.*, 1999–NMCA–070, ¶ 15, 127 N.M. 397, 981 P.2d 1215 (finding error in verdict form harmless where the jury determined defendant's conduct was not a proximate cause of plaintiff's injuries). Further, even if we were to find that it was error to amend the pre-trial order to include the issue of bad faith, we would not reverse as the

result would be no different than the result here where there were no findings of bad faith. *See In re Estate of Heeter*, 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct.App.1992) ("On appeal, error will not be corrected if it will not change the result.").

{12} Insofar as the City argues that the WCJ improperly added the issue of retaliatory discharge and then referred the charges to the Administration for investigation, we disagree. We believe that the WCJ has the authority to report any violations of the Act to the Administration for investigation with or without a formal complaint. *See* N.M. Admin. Code tit. 11, § 4.5.11 (2001) (setting out procedures for initiation of administrative enforcement proceedings). Thus, the fact that the WCJ added this issue to the pre-trial order did not prejudice the City. The only action taken on the issue was a referral to the Administration, something that the WCJ could have done without adding it to the list of issues to be resolved at the merits hearing.

{13} We hold that the WCJ did not commit reversible error in adding issues to the pre-trial order and in considering alleged violations of the Act.

### Substantial Evidence of Positions for Which Worker Was Qualified

{14} The City argues that the evidence does not support the findings of the WCJ that the City had hired at least 23 employees for jobs for which Worker was qualified. In reviewing a claim for sufficiency of the evidence, we review the record as a whole. "We must find 'evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency.'" *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991) (citation omitted). We view the evidence in the light most favorable to the agency decision, but may not view the favorable evidence with total disregard to contravening evidence. *Id.*

{15} The City contests the WCJ's findings that Worker was qualified and fit for 23 jobs that paid less than his pre-injury job.

The evidence established that Worker's treating physician had given him a 50 pound lifting restriction and a prohibition against using a jackhammer. Evidence was presented in the form of job descriptions of various jobs in the City that did not require lifting more than 50 pounds or using a jackhammer. The City argues that there was no certification by Worker's treating physician that he could perform the jobs without risk of reinjury. We believe that the WCJ could infer certification from the limitations placed on Worker by his physician and the job descriptions that did not require actions prohibited by Worker's physician.

{16} We recognize that there was conflicting evidence in the form of a functional capacity evaluation and testimony from a different doctor regarding Worker's limitations. That conflicting evidence does not, however, require us to discount the opinion of Worker's treating physician regarding his limitations. There was simply conflicting evidence regarding what Worker was physically capable of doing. It was for the WCJ to resolve those conflicts. *See Herman,* 111 N.M. at 552–53, 807 P.2d at 736–37. Then, comparing those restrictions with the job descriptions, the WCJ could find those jobs within Worker's capabilities. We do not believe that the fact that Worker testified that he did not want temporary or part-time work is relevant to the issue. The questions are whether the City is hiring, what the job is, and whether the Worker is capable of doing the work. Here, the WCJ found that the City was hiring for jobs that were within Worker's abilities. Therefore, we conclude that the evidence supports the finding that the City had 23 openings for jobs that were within Worker's capabilities.

### Violation of Section 52–1–50.1 Rehire Provisions

{17} The City contends that the WCJ did not have jurisdiction to take evidence on, find a violation of, and order action pursuant to Section 52–1–50.1. This section provides that

[i]f an employer is hiring, the employer shall offer to rehire the employer's worker who has stopped working due to an injury for which the worker has received, or is due to receive, benefits under the ... Act ... and who applies for his pre-injury job or modified job similar to the pre-injury job,

subject to the conditions that his treating health care provider certify that he is capable of carrying out the job without risk of reinjury and the employer has the job available. Section 52–1–50.1(A). The section goes on to state that "[t]he exclusive remedy for a violation of the section shall be a fine as specified in Section 52–1–61 NMSA 1978." Section 52–1–50.1(D); *see also* NMSA 1978, § 52–1–61 (1990). Because Section 52–1–61 states that the director shall impose penalties on those who violate provisions of the Act, the City argues that the WCJ had no authority to consider and take action on a violation of the rehire provision. We disagree.

{18} The Administration's regulations provide that a charge of prohibited conduct may be brought by filing a complaint or application to a judge. N.M. Admin. Code tit. 11, § 4.5.8.1.1 (2001). Thus, a claim for violation of this provision of the Act can be brought by filing a complaint with the Workers' Compensation Administration for consideration by a workers' compensation judge. The judge has the authority to hear the claim. It has been given that authority by the regulations of the Administration. Simply because the exclusive remedy is by fine of the director does not mean that the WCJ has no authority to hear the claim or make findings and conclusions thereon. The claim, or cause of action, is separate and apart from the remedy. *See* 1A C.J.S. *Actions* § 3(b) (1985).

{19} The question is whether, having found a violation, the WCJ had the authority to order the City to find an appropriate job for Worker and to rehire him. We believe that she did. Section 52–1–50.1 describes the exclusive remedy for a violation of the statute as a fine. Section 52–1–61 deals with penalties imposed by the director for violation of provisions of the Act. Those penalties are in the form of a fine. We must read the two statutes together in an effort to produce a harmonious whole. *Key v. Chrysler Motors Corp.,* 1996–NMSC–038, ¶ 14, 121 N.M.

764, 769, 918 P.2d 350, 355. So reading the provisions, we view the exclusive remedy portion of the statute as directed toward penalty-type remedies. Thus, any penalties for violation of this section must be awarded by the director of the Administration.

{20} However, we do not view the WCJ's order of reinstatement as a penalty for violation of Section 52–1–50.1. A penalty is "a punishment imposed on a wrongdoer." BLACK'S LAW DICTIONARY 1153 (7th ed.1999). Here, the order of reinstatement is simply an order ensuring compliance with the statute. There is no suggestion that the City is being penalized for its failure to rehire Worker by this portion of the order. It is simply being ordered by the WCJ to comply with the statute. Such an order is within the inherent authority of the WCJ to enforce the obligations of the City under the Act. *See* N.M. Admin. Code tit. 11, § 4.5.8 (2001). We conclude that the WCJ has the authority to order the City to comply with the rehire statute. However, any penalty for violation of the statute must be levied by the director.

### Unfair Claims Processing Practice

{21} The City contends that the WCJ did not have the authority to award a benefit penalty for its failure to rehire Worker. In addition to finding a violation of the statute and ordering the City to find a job for Worker, the WCJ determined that the City had engaged in an unfair claims processing practice and awarded a benefit penalty, pursuant to Section 52–1–28.1. The WCJ determined that the City's actions in failing to rehire Worker was an unfair claims processing practice. The City contends that the exclusive remedy language in Section 52–1–50.1 prohibits the WCJ from finding an unfair claims processing practice, and assessing a penalty thereon, for its actions in the failure to rehire an injured worker. We disagree.

{22} The Administration has defined unfair claims processing practices to include those practices relating to a claim for benefits where one of the parties has misrepresented the facts relating to benefits or failed to act promptly with respect to claims. *See* N.M. Admin. Code tit. 11, § 4.1.7.25 (2001).

The City argues that the evidence here was that Worker's claim was properly processed and that he had properly received his benefits. We do not believe, however, that the payment of benefits alone is what is contemplated by the phrase "unfair claim processing practice." In fact, a "claim" is defined by the Administration as "any allegation of entitlement to benefits or relief under the Act." N.M. Admin. Code tit. 11, § 4.1.7.6 (2001). Here, the relief sought by Worker was rehiring him after his injury had resolved. Thus, his unfair claim processing allegation went to his claim that he should be rehired by the City.

{23} We believe that the WCJ could review the City's actions in connection with Worker's claim that he should be rehired in order to determine whether it had acted unfairly or improperly in handling his request to be rehired. In regard to claims processing, we see no difference between a claim for benefits and a claim for rehire. Both are claims under the Act and both can be improperly handled, thus leading to a claim of unfair claims processing.

{24} The fact that the rehire section of the statute has a penalty for its violation does not necessarily affect a separate claim for unfair claims processing. The latter may be considered a separate claim for unfair treatment in connection with the worker's claim under the Act. The question we must address is whether the legislature intended two penalties, each for different acts, although having a common nucleus of underlying facts. We believe that it did.

{25} We have previously commented on the drafting of the Act, its imprecision, and our obligation to determine the meaning of the language used by the legislature in accordance with the purpose of the Act. *See Coslett v. Third St. Grocery*, 117 N.M. 727, 729–30, 876 P.2d 656, 658–59 (Ct.App.1994). We have often looked to the legislative history and environment as tools in determining the meaning of legislation. *See, e.g., State v. Chavez*, 115 N.M. 248, 249–50, 849 P.2d 1071, 1072–73 (Ct.App.1992). One of the important changes wrought by the 1990 Act was the elimination of vocational rehabilitation benefits contemporaneously with the addition of

the requirement of rehire. *See* NMSA 1978, § 52–1–50 (1989) and annotation thereunder; § 52–1–50.1. The importance of the rehire provisions in the context of changes in benefits that generally lowered monetary benefits while emphasizing return to work should not be minimized. *See* NMSA 1978, §§ 52–1–25.1 to –26.4 (1990). Thus, we believe that, if a worker can show an unfair claims processing practice in addition to a failure to rehire, even if the practice relates to a failure to rehire, the legislature would intend that worker have the benefit of the unfair claims processing penalty, separate and apart from the director's assessment of a penalty under Section 52–1–61.

■ {26} Under the circumstances of this case, where Worker's claim is stated as one for rehire and evidence is developed showing that the employer failed to act properly with respect to this claim, the WCJ can find an unfair claims processing practice. The exclusive remedy for violation of the rehire statute in no way affects a claim for unfair claims processing.

{27} We determine that the WCJ could find here that the City's actions in failing to rehire Worker established an unfair claims processing practice. There was a good deal of evidence regarding procedures approved by the City for rehiring its injured workers. There was also a good deal of evidence presented below regarding the lackadaisical efforts put forth by different City officials to follow the procedures. The WCJ could have determined that, based on the evidence presented, while not acting in actual bad faith, the City did engage in unfair claims processing in the manner in which it dealt with Worker's claim to be put back to work. This evidence shows why a separate penalty for unfair claims processing was warranted.

### Reporting Violation of Section 52–1–28.2

■ {28} The City contends that there was insufficient evidence to support the WCJ's decision to report allegations of retaliatory discharge to the Administration. Section 52–1–28.2 prohibits an employer from discharging, threatening to discharge, or otherwise retaliating in the terms or conditions of employment against a worker who seeks

workers' compensation benefits. NMSA 1978, § 52–1–28.2 (1990). The Administration's regulations indicate that any person can "make a written allegation to the Director of an act or pattern of actions with potential for adverse impact upon the workers' compensation system." N.M. Admin. Code tit. 11, § 4.5.8.1.3 (2001). There is nothing in the regulation that requires such allegation to be supported by substantial evidence. Rather, once reported, the director must make the probable cause determination based on evidence presented. N.M. Admin. Code tit. 11, § 4.5.11.3 (2001). Even if there was a requirement that the allegation be supported by substantial evidence, we believe that there was sufficient evidence from which the WCJ could have determined that the actions of the City needed to be investigated by the Administration.

{29} The evidence established that Worker had been in physical layoff status since March of 2000. The City stated that he had not been terminated from employment with the City. However, Worker was clearly not earning a wage and did not have a job to which to report. The WCJ could have viewed this evidence as establishing a constructive discharge of Worker. Since the failure to give him work was based on his work-related injury, the WCJ could have concluded that the City's actions were caused by his claim under the Act. Although the WCJ found that there was apparently no intentional denial to Worker of the opportunity to return to work, there was sufficient action here which prevented Worker from returning to work that alerted the WCJ to a potential for adverse impact upon the workers' compensation system. That is all that is needed to make a report to the Administration.

{30} We determine that the WCJ properly made a report to the Administration regarding a possible retaliatory discharge of Worker.

### CONCLUSION

{31} We hold that the WCJ had the authority to order the City to find appropriate work for Worker. We also hold that the WCJ was permitted to, and had a valid basis

for, awarding a benefit penalty for unfair claims processing practice. Likewise, we conclude that the WCJ did not err in her findings or in amending the pre-trial order. We affirm the order of the WCJ.

{32} IT IS SO ORDERED.

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and A. JOSEPH ALARID, Judge.