2006-NMCA-057

135 P.3d 234

**Robert KOSIBA, Plaintiff–
Appellant/Cross–
Appellee,**

v.

**PUEBLO OF SAN JUAN, San Juan
Gaming Commission, Defendants–
Appellees/Cross–Appellants.**

**No. 24,725.**

Court of Appeals of New Mexico.

Jan. 13, 2006.

Certiorari Denied, No. 29,648,
March 3, 2006.

**534**

Familia Legal Services, Lorenzo E. Atencio, Espanola, NM, for Appellant/Cross-Appellee.

Bergen Law Offices, LLC, Leander Bergen, Albuquerque, NM, for Appellees/Cross-Appellants Pueblo of San Juan.

Chestnut Law Office, Peter C. Chestnut, Joe M. Tenorio, Albuquerque, NM, for Appellees/Cross-Appellants San Juan Pueblo Gaming Commission.

## OPINION

ALARID, Judge.

{1} This case requires us to decide whether the Pueblo of San Juan (the Tribe) and its Gaming Commission are immune from suit on Plaintiff's complaint for money damages for actions in connection with the revocation of Plaintiff's gaming license. We conclude that they are immune from suit on the claims asserted by Plaintiff, and, accordingly, we affirm the district court's dismissal of this action.

## BACKGROUND

{2} Plaintiff, Robert Kosiba, is the former executive director of the Pueblo of San Juan Gaming Commission. Plaintiff claims that, while employed as executive director, he disciplined certain employees of the Gaming Commission; and, that in retaliation against Plaintiff, these same employees instigated an investigation by the Gaming Commission that ultimately led the Gaming Commission to revoke Plaintiff's gaming license. Plaintiff alleges that, in revoking his license, the Gaming Commission failed to provide Plaintiff adequate notice of the accusations against him and denied him a fair hearing before an impartial trier of fact.

{3} Plaintiff appealed the revocation of his license to the San Juan Tribal Court. The Tribal Court affirmed the Gaming Commission's decision.

{4} Plaintiff then brought the present lawsuit in district court, naming the Tribe and the Gaming Commission as Defendants. Plaintiff sought money damages for the loss of his ability to earn a living in the gaming industry, for physical and mental distress, and for relocation costs. Defendants entered an appearance and moved to dismiss the complaint, citing a lack of subject matter jurisdiction, tribal sovereign immunity, and the failure of Plaintiff's complaint to state a claim upon which relief may be granted.

{5} The district court dismissed the complaint ruling that Defendants were immune from suit and that Plaintiff had not established a valid waiver of that immunity.

{6} Plaintiff appeals.

## DISCUSSION

{7} The basic principles governing the sovereign immunity of tribes and tribal agencies are well settled. *E.g., Sanchez v. Santa Ana Golf Club, Inc.*, 2005-NMCA-003, ¶¶ 5-7, 136 N.M. 682, 104 P.3d 548. We review a district court's determination of tribal sovereign immunity under a de novo standard. *Id.* ¶ 4. There is no dispute that the Tribe is a federally recognized Indian Tribe. Accordingly, in the absence of congressional abrogation or an effective waiver of sovereign immunity, the Tribe and its agencies are immune from suit. *Id.* ¶ 5.

{8} At the time of the events described in the complaint, the Tribe and the State of New Mexico were parties to an Indian Gaming Compact as permitted by the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 through 2721 (2000). There is no dispute as to the validity of this compact. Plaintiff relies upon the following provision of the com-

pact to effect a waiver of sovereign immunity:

SECTION 8. Protection of Visitors

A. Policy Concerning Protection of Visitors. The safety and protection of visitors to a Gaming Facility is a priority of the Tribe, and it is the purpose of this Section to assure that any such persons who suffer bodily injury or *property damage* proximately caused by the conduct of the Gaming Enterprise have an effective remedy for obtaining fair and just compensation. To that end, in this Section, and subject to its terms, the Tribe agrees to carry insurance that covers such injury or loss, agrees to a limited waiver of its immunity from suit, and agrees to proceed either in binding arbitration proceedings or in a court of competent jurisdiction, at the visitor's election, with respect to claims for bodily injury or *property damage* proximately caused by the conduct of the Gaming Enterprise. For purposes of this Section, any such claim may be brought in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court. (Emphasis added).

{9} Citing a Nevada case, *Coury v. Robison*, 115 Nev. 84, 976 P.2d 518, 520 (1999), the district court reasoned that Plaintiff's interest in his gaming license was "a privilege and not a property right." The district court observed that *Coury* was consistent with prior New Mexico cases, which the district court believed "distinguish between licenses involving the prerequisite of a professional educational degree and those that do not require such degrees." The district court concluded that Plaintiff's license, as a mere privilege, did not constitute property within the meaning of Section 8 of the compact. While we agree with the district court that the waiver of immunity provided by

Section 8 does not apply to Defendant's conduct as alleged in the complaint, we do not adopt the district court's rationale.

{10} Section 8 of the compact is limited to instances of "bodily injury or property damage proximately caused by the conduct *of the Gaming Enterprise.*" (Emphasis added). Unless Plaintiff's losses are caused by the conduct of the Gaming Enterprise, they cannot fall within Section 8's waiver of immunity, and this is so even if they indisputably constitute bodily injury or property damage. In other words, Section 8 imposes two conjunctive requirements: a plaintiff must suffer bodily injury[1] or property damage *and* such bodily injury or property damage must have been caused by the conduct of the Gaming Enterprise. Under the compact, "Gaming Enterprise" is used as a term of art and is defined as "the tribal entity created and designated by the Tribe as having authority to conduct Class III Gaming pursuant to this Compact." According to Plaintiff's complaint, Tsay Corporation is the entity through which the Tribe conducts its gaming enterprises. Documents attached to the complaint show that Tsay Corporation is a federally chartered business corporation organized by the Tribe for the purposes of establishing an independent San Juan Pueblo business enterprise. We are satisfied that Tsay Corporation is the Gaming Enterprise as defined by the compact. Plaintiff's complaint contains no allegations of wrongdoing by Tsay Corporation; rather, Plaintiff's complaint alleges that his injuries were proximately caused by the actions of the Gaming Commission in revoking his license.

{11} Under the compact, the Gaming Commission[2] is a distinct entity, separate and apart from the Gaming Enterprise. As Plaintiff's complaint acknowledges, the Gaming Commission is an agency of the Tribe.

The purpose of a tribal gaming commission is strictly regulatory, not managerial. The tribal gaming commission conducts

---

1. Plaintiff does not claim that he suffered bodily injury.

2. The compact, following the terminology used in NMSA 1978, § 11–13–1(N) (1997), uses the term "Tribal Gaming *Agency*" rather than tribal gaming commission. The Tribal Gaming Ordinance uses the term "Gaming Board" rather than gaming commission. There is no question that the powers and duties of the Gaming Commission correspond to those of the Tribal Gaming Agency as defined in the compact, and the Gaming Board as defined in the Gaming Ordinance.

536

oversight to ensure compliance with tribal, federal, and, if applicable, state laws and regulations. The commission serves as the licensing body for individuals employed in the gaming operation.

Tracy Burris, *How Tribal Gaming Commissions Are Evolving*, 8 Gaming L.Rev. 243, 244 (2004). Under Section 5 of the compact, the Gaming Commission is the entity that issues gaming licenses. Under the Gaming Ordinance, the Gaming Commission, not the Gaming Enterprise, is the entity with authority to suspend or revoke a previously issued gaming license.

{12} "[A] waiver of [tribal] sovereign immunity ... 'must be unequivocally expressed.'" *Sanchez*, 2005–NMCA–003, ¶ 7, 136 N.M. 682, 104 P.3d 548 (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)). Under the compact the governmental actions of the Gaming Commission in regulating gaming are clearly distinguishable from the commercial activities of the Gaming Enterprise. Plaintiff, whose loss of his gaming license is alleged to have been caused by improper governmental action of the Gaming Commission, lacks standing to assert the waiver of immunity contained in Section 8, which is limited to victims of whose injuries are caused by the conduct of the Gaming Enterprise. Plaintiff failed to establish a waiver of the Tribe's and the Gaming Commission's immunity from suit on the claims asserted by Plaintiff.

{13} The judgment of the district court dismissing Plaintiff's complaint is affirmed.

{14} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and CELIA FOY CASTILLO, Judge.