**Certiorari Denied, No. 31,757, July 15, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-087**

**Filing Date:  April 24, 2009**

**Docket No.  28,762**

**DAVID MARTINEZ,**

   **Worker-Appellant,**

**v.**

**CITIES OF GOLD CASINO,**
**POJOAQUE PUEBLO, and**
**FOOD INDUSTRIES SELF-INSURANCE FUND,**

   **Employer/Insurer-Appellees.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Gregory Griego, Judge**

Annie Laurie Coogan
Santa Fe, NM

for Appellant

Pueblo of Pojoaque Legal Department
Frank A. Demolli
Steffani A. Cochran
Santa Fe, NM

for Appellees

**OPINION**

**VANZI, Judge.**

1

**{1}** David Martinez (Worker) appeals from a compensation order granting only partial relief. In the proceedings below, the Workers' Compensation Judge (WCJ) determined that Worker had been wrongfully terminated by his employer, the Cities of Gold Casino (Casino), which does business as Pojoaque Gaming Inc. (PGI). Worker claimed he was terminated in retaliation for having filed a workers' compensation claim. Although the Workers' Compensation Act (the Act) expressly provides that the remedy for retaliatory discharge is mandatory rehiring, the WCJ concluded that he lacked authority to award such relief in this case. A separate tribal entity that had not waived its sovereign immunity was unwilling to reissue the employment license Worker required to resume his former employment. On appeal, Worker challenges this aspect of the compensation order as well as the adequacy of the remedies and cost-sharing provisions established in NMSA 1978, Sections 52-1-28.1, -28.2, and -54(F) (1990, as amended through 2003) of the Act. We reverse in part, affirm in part, and remand for further proceedings.

## I.     BACKGROUND

### A.     Worker's Initial Injury and Workers' Compensation Claim

**{2}** On February 9, 2006, Worker filed a claim with the Workers' Compensation Administration (WCA) against PGI. In his claim, Worker alleged that he suffered an "[o]ccupational injury," to wit, a "tear of [the] ligaments" of his "left foot." This injury was allegedly sustained while "[m]oving . . . [a money] cart" during the course of his duties as a "[m]anager—hard and soft count" at the "Cities of Gold Casino Pojoaque Pueblo."

**{3}** Named as defendants in Worker's complaint were the "Cities of Gold Casino, Pojoaque Pueblo and Food Industries, Industries [sic] Self-Insurance Company." Despite the fact that only these three entities were named by Worker in his complaint, the complex nature of the manner in which the Cities of Gold Casino is owned and operated by the Pojoaque Pueblo (Pueblo) ultimately led to the inclusion of additional defendants during the WCA proceedings. A brief description of the relationships among the various defendants follows.

### B.     The Defendants

**{4}** The Casino is a commercial business enterprise that is owned and operated by PGI. PGI is an independent corporation owned by the Pueblo, a federally recognized Indian tribal government. Pursuant to Pueblo Tribal Council Resolution 2006-134, the Buffalo Thunder Development Authority (BTDA), a "political subdivision and unincorporated instrumentality" of the Pueblo, obtained ownership of PGI on

2

December 8, 2006. In addition to being owned and operated by PGI, an entity owned by BTDA, which is in turn a political subdivision of the Pueblo, the Casino and its operations are heavily influenced by the decisions of yet another independent Pueblo entity: the Pueblo of Pojoaque Gaming Commission (PPGC). PPGC is the sole entity responsible for the issuance of gaming licenses that certain employees of the Casino are required to possess pursuant to the gaming compact (Compact) entered into by the Pueblo and the State of New Mexico. In addition to requiring the Pueblo to issue certain Casino employees gaming licenses—which, as noted, the Pueblo does through PPGC—the Compact also requires the Pueblo to provide workers' compensation insurance to all employees working at the Casino "through participation in programs offering benefits at least as favorable as those provided by comparable state programs." The Food Industries Self-Insurance Fund (FISIF) is the workers' compensation insurance carrier PGI contracted with to provide workers' compensation insurance for the employees of the Casino. The Casino, PGI, the Pueblo, BTDA, PPGC, and FISIF were all parties below and are referred to collectively as "Defendants" when referencing the lower court case.

## C. Proceedings Before the WCA Regarding Worker's Injury Claim

**{5}** Once filed, the process of adjudicating Worker's injury claim began with a WCA mediation conference in which Worker, his attorney, and attorneys for Defendants took part. At that time, the parties agreed that "the [WCA] does have jurisdiction over this claim." Aside from this single agreement, the parties were unable to reach a resolution. Thereafter, Casino and FISIF submitted an answer to Worker's complaint. At that time, jurisdiction of the WCA was not contested. The parties subsequently submitted a pretrial order approved by the WCJ, which contained a stipulation that the "[j]urisdiction of [WCA] is not contested." The pretrial order listed Eileen Vialpando (Witness) as one of Worker's potential witnesses for trial. The WCJ heard Worker's claim for medical and compensation benefits and filed a memorandum opinion stating that Worker was entitled to such benefits and directing the parties to file requested findings of fact and conclusions of law.

**{6}** Eight days after the WCJ's opinion was entered, on November 29, 2006, the PPGC suspended the licenses that Worker and Witness required to perform their employment duties. Employee and Witness were banned from the premises of the Casino until further notice. On January 25, 2007, both Worker's and Witness's licenses were permanently revoked by PPGC resulting in termination of their employment with the Casino and the Pueblo.

**{7}** Meanwhile, the WCJ issued an order regarding attorney fees related to worker's injury claim. The WCJ found that Worker's attorney was entitled to $6,500

plus gross receipts tax. This payment was to be paid equally by Worker and Defendants.

**{8}** The WCJ later issued a compensation order memorializing his previous memorandum opinion and including findings of fact and conclusions of law. The WCJ found that the "[WCA] has jurisdiction over the parties" and that the accident that led to Worker's injury occurred in the course and scope of Worker's employment at the Casino. Based on these findings, the WCJ determined that Worker was entitled to compensation in the amount of $38.50 per week for 115 weeks, for a total of $4,427.50.

### D.    Worker's Bad Faith/Retaliatory Discharge Claim

**{9}** On February 9, 2007, Worker and Witness submitted a joint complaint with the WCA claiming that the Casino, the Pueblo, and FISIF had engaged in "Bad Faith/Unfair Claims Processing" and "Retaliation" as a direct result of Worker having filed his initial complaint with the WCA and Witness having participated in those proceedings on Worker's behalf. Worker and Witness further specified that their November 29, 2006, suspensions and January 25, 2007, terminations were in violation of Section 52-1-28.1, which prohibits unfair and bad faith claim-processing practices, and Section 52-1-28.2, which prohibits retaliation against employees seeking benefits. This new complaint was filed under the same WCA number as Worker's original complaint, and the matter proceeded accordingly.

**{10}** On April 13, 2007, Worker and Witness submitted an amended claim with the WCA that was identical to their February 9, 2007, claim in all respects except that it added PPGC as a defendant. Shortly thereafter, counsel from the Pojoaque Legal Department submitted an "Entry of Special Appearance" requesting that "Employer" be dismissed from the proceedings.

**{11}** The motion to dismiss advanced three arguments. The first was based on tribal sovereign immunity. Defendants' remaining arguments included the following: Worker failed to exhaust his tribal remedies with respect to the revocation of his license, and Worker failed to state a claim upon which relief could be granted in that no cause of action existed for Worker to challenge PGI's submission of materials to PPGC relating to Worker's suitability to engage in Class III gaming activities.

**{12}** Defendants then submitted a separate motion to dismiss all claims relating to Witness. Defendants contended that because Section 52-1-28.1 penalizes employers for improper claims filed only by injured workers and Section 52-1-28.2 prohibits retaliatory discharge only against a worker seeking workers' compensation benefits,

4

Witness was not entitled to relief under either provision. The WCJ granted the motion and dismissed the claims raised by Witness on June 18, 2007.

**{13}** On June 4, 2007, the WCJ issued a ruling regarding PGI, PPGC, and FISIF's motion to dismiss for lack of subject matter jurisdiction. The WCJ first noted that neither PGI, the Pueblo, nor FISIF had raised the issue of sovereign immunity prior to the filing of the first motion to dismiss in April 2007. The WCJ remarked that prior to the filing of that motion, PGI and FISIF had stipulated that "[j]urisdiction of the [WCA] is not contested." The WCJ also observed that neither PGI nor FISIF raised sovereign immunity in their answer to Worker's initial complaint. In light of these facts, the WCJ concluded that "jurisdiction does exist at least as against [PGI]." The WCJ then noted that PPGC was first added as a Defendant in the amended complaint, after Worker's original injury complaint had been adjudicated. Because PPGC had not explicitly waived sovereign immunity, the WCJ held that PPGC was entitled to raise that defense. Accordingly, the WCJ concluded that "the Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied as regards [PGI] but is granted as regards [PPGC]."

**{14}** Defendants then submitted a motion requesting that the WCJ correct the caption in the case. Counsel for Defendants argued that throughout the proceedings the Worker's employer had wrongly been identified as Pojoaque Pueblo and Cities of Gold Casino. According to counsel for Defendants, PGI was the sole employer during Worker's employment at the Casino. Worker submitted a response, expressing no objection to the addition of PGI as one of the named Defendants but maintaining that the Casino, PPGC, and the Pueblo should all remain Defendants in the case because, in his view, all of the named entities were his employer under the Act.

**{15}** On August 14, 2007, in his findings of fact and conclusions of law, the WCJ ruled that the employer in the case was PGI and that PGI had waived its sovereign immunity by "its actions in voluntarily litigating in this case through a trial and entry of a [c]ompensation [o]rder" and by "consenting to entry of the [p]re-[t]rial [o]rder of October 12, 2006, which explicitly noted '[j]urisdiction of the [WCA] is not contested.'" On the other hand, the WCJ concluded that because the Pueblo and PPGC had not waived their sovereign immunity, claims against them were "barred."

**{16}** The WCJ issued a memorandum opinion on February 29, 2008, in which the WCJ restated that PPGC was never Worker's employer and that PPGC was immune from suit pursuant to its status as a tribal entity possessing sovereign immunity. With respect to PGI, however, the WCJ again concluded that it had waived its sovereign immunity by submitting to the jurisdiction of the WCA through participation in the proceedings related to Worker's injury claim. The WCJ further concluded that PGI

had provided material misinformation to PPGC that subsequently resulted in PPGC's terminating Worker's license, which in turn led to the termination of Worker's employment with PGI. This chain of events, the WCJ concluded, directly resulted from Worker's having filed his initial claim with the WCA and constituted both bad faith and retaliation by PGI. Accordingly, PGI's actions were in violation of Section 52-1-28.1, and Worker was entitled to a 25 percent increase in his initial compensation award. The WCJ further found that PGI, by retaliating against Worker, acted in violation of Section 52-1-28.2 and, as such, the WCJ imposed a penalty against PGI of $2,500 payable to the WCA pursuant to the remedy provisions in Section 52-1-28.2(C) and (D). Finally, the WCJ concluded that despite the fact that Section 52-1-28.2(B) explicitly requires employers who retaliate against employees for seeking workers' compensation benefits to rehire, the WCJ had no authority to order PGI to do so. The WCJ explained that "[i]n order for [PGI] to rehire . . . Worker, Worker must be appropriately licensed by [PPGC]." "The [WCA] cannot require the [PPGC] to license Worker." On April 1, 2008, the WCJ issued a compensation order in which he restated the conclusions noted immediately above.

### E.    Attorney Fees

**{17}**    After the WCJ issued his compensation order, Worker submitted proposed findings of fact and conclusions of law with respect to attorney fees on the bad faith and retaliation claims. Therein, Worker noted that he had previously been awarded $6,500 in attorney fees as a result of the WCJ's initial compensation order relating to his workplace injury claim. Worker then pointed out that with respect to the bad faith/retaliation claim alone, Worker had amassed $20,858.38 in attorney fees. Accordingly, in addition to the $6,500 previously awarded, Worker requested an award of $12,500 in attorney fees, for a total award equivalent to the maximum award permitted under the Act of $19,000.[1]

**{18}**    Worker then argued, assuming the WCJ was willing to grant his additional attorney fees request, that the Act's cap and its requirement of a 50-50 split of the fees would be unjust and unconstitutional, pursuant to *Mieras v. Dyncorp*, 1996-NMCA-095, 122 N.M. 401, 925 P.2d 518. The same day Worker submitted his attorney fees request, the WCJ issued his order. The WCJ awarded Worker $12,500 as requested. The WCJ took judicial notice of the chilling effect of miserly fees on representation but found that the $12,500 award was reasonable and appropriate.

---

[1] We note that Worker indicated that his additional fee request would result in a total award of $19,500. Given that he had previously been awarded $6,500 and was requesting an additional $12,500, Worker was requesting a total award of only $19,000. This conclusion is consistent with the provisions set forth in NMSA 1978, 52-1-54(I) (2003), which caps attorney fees at $19,000.

**F.     Worker's Appeal**

**{19}**    Worker timely filed a notice of appeal with this Court. The notice referred only to Worker; Witness was not mentioned. A docketing statement was filed with this Court a month later. Within the docketing statement, Worker made several arguments pertaining to the applicability of the WCA provisions to Witness.

**II.     DISCUSSION**

**{20}**    The parties contest five issues: (1) whether the provisions and remedies set forth in Sections 52-1-28.1 and -28.2 are applicable to Witness, (2) whether the WCA has subject matter jurisdiction to order Defendants to rehire Worker as required by Section 52-1-28.2(B), (3) whether Worker's failure to exhaust tribal remedies precludes this Court from exercising its jurisdiction, (4) whether the remedies and damages set forth in Sections 52-1-28.1 and -28.2(B) are adequate and constitutional, and (5) whether the attorney fees cap provision in Section 52-1-54(I) is constitutional in light of the provision requiring that the cost of any award be divided equally between the employer and the employee.

**A.     Applicability of Provisions to Witness**

**{21}**    Although the applicability of Sections 52-1-28.1 and -28.2(B) to Witness is a compelling question, we conclude that it is not properly before us. The procedural rules governing appeals to this Court from the WCA are clear: "[a]ny party in interest may, within thirty days of mailing of the final order of the workers' compensation judge, file a notice of appeal with the court of appeals." NMSA 1978, § 52-5-8(A) (1989). The WCJ dismissed Witness's claims with prejudice on June 18, 2007. That order constituted a final order with respect to Witness's claims. *See* Rule 1-054(B)(2) NMRA ("When multiple parties are involved, judgment may be entered adjudicating all issues as to one or more, but fewer than all parties. Such judgment shall be a final one unless the court, in its discretion, expressly provides otherwise and a provision to that effect is contained in the judgment."). Witness did not file a notice of appeal within thirty days of that order. Although Worker's notice of appeal was timely filed, Witness was not named in the notice. "[T]ime and place requirements for filing the notice of appeal are mandatory preconditions to the exercise of appellate jurisdiction." *Williams v. Rio Rancho Pub. Schs.*, 2008-NMCA-150, ¶ 15, 145 N.M. 214, 195 P.3d 879. We therefore decline to consider Witness's claims.

**B.     Whether the WCJ Has the Authority to Order Worker's Employer to Rehire Worker**

## 1.    Sovereign Immunity

**{22}**    We review de novo the legal question of whether an Indian tribe, or an entity under the tribe's control, possesses sovereign immunity. *See Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 6, 132 N.M. 207, 46 P.3d 668.  As previously noted, there are several tribal-controlled entities involved in the ownership of the Casino. As a federally recognized Indian tribe, the Pueblo undisputedly possesses sovereign immunity. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58-59 (1978).  PGI is "a tribally chartered corporation" created by, but independent of, the Pueblo.  PGI was incorporated by the Pueblo under Section 17 of the Indian Reorganization Act (IRA), 25 U.S.C. § 477 (1990).   Corporations formed under Section 17 enjoy sovereign immunity and may independently waive such protection. *Sanchez v. Santa Ana Golf Club, Inc.*, 2005-NMCA-003, ¶ 6, 136 N.M. 682, 104 P.3d 548 (filed 2004). The PPGC and other gaming commissions like it are "strictly regulatory [entities that conduct] oversight to ensure compliance with tribal, federal, and, if applicable, state laws and regulations." *Kosiba v. Pueblo of San Juan*, 2006-NMCA-057, ¶ 11, 139 N.M. 533, 135 P.3d 234 (internal quotation marks and citation omitted).  As such, the PPGC also possesses sovereign immunity, and that immunity may also be independently waived. *See id.*   Finally, BTDA is an unincorporated political subdivision of the Pueblo and itself possesses sovereign immunity which it may waive. *See Ramey Constr. Co. v. Apache Tribe of Mescalaro Reservation*, 673 F.2d 315, 320 (10th Cir. 1982) (holding that resort hotel complex was a sub-entity of the tribe and thus entitled to sovereign immunity).  Having discussed the various tribal entities involved, we now address the implications of these findings with regard to whether Worker is entitled to be rehired or, as the Defendants indicate, whether this Court is precluded from enforcing the rehire provision of the Act because PPGC has not waived its sovereign immunity.

**{23}**    We begin by addressing Worker's arguments that the WCJ did have authority to require the Pueblo and the PPGC to rehire him.  Worker first argues that this case is analogous to *Lucero v. City of Albuquerque*, 2002-NMCA-034, ¶ 17, 132 N.M. 1, 43 P.3d 352, wherein this Court rejected the city's contention that a workers' compensation judge lacked the authority to order the city to rehire a worker under NMSA 1978, Section 52-1-50.1 (1990).  That particular section of the Act requires employers to rehire workers who have been injured as a consequence of their employment if a position is available and if the injured worker is capable of fulfilling the duties of that available position.  Section 52-1-50.1(A).  Worker analogizes the present matter to *Lucero* because, like the City of Albuquerque in that case, Defendants in the present matter contest the authority of the WCJ.  We find *Lucero* to be distinguishable.

8

**{24}** The issue in *Lucero* was whether a workers' compensation judge had the authority to enforce provisions of the Act where, due to lack of clarity in the Act itself, the Act suggested that only the director of the WCA had the authority to enforce the particular provisions at issue in that case and that the provisions could be enforced only by way of a fine rather than by mandatory rehiring. 2002-NMCA-034, ¶¶ 18-20. Unlike *Lucero*, the issue in the present case is not who has the authority to enforce a particular WCA provision or the means of enforcing that provision, but whether the Act itself is applicable to the Pueblo or PPGC. Nowhere in *Lucero* did the city of Albuquerque argue that the Act was inapplicable to it as an entity; it merely disputed the manner in which the Act itself functioned.

**{25}** Worker's second argument regarding the WCJ's authority to order the Pueblo and PPGC to rehire him is premised on *Doe v. Santa Clara Pueblo*, 2007-NMSC-008, 141 N.M. 269, 154 P.3d 644. In *Doe*, our Supreme Court concluded, after a lengthy and thoughtful discussion of the legislative history of the Indian Gaming Regulatory Act (IGRA), that "state courts have jurisdiction over personal injury actions filed against Pueblos arising from negligent acts alleged against casinos owned and operated by the Pueblos and occurring on pueblo lands." *Id.* ¶ 1. The Court reached this conclusion by finding that "[n]othing in the language of IGRA prohibits jurisdiction shifting." *Id.* ¶ 13. The term "jurisdiction shifting," the Court explained, referred to the principle that, rather than "Congress allocating jurisdiction between the tribes and states" in the IGRA, Congress thought it more appropriate to permit the tribes and states themselves to negotiate jurisdictional questions given the "diverse interests of tribes and states" with respect to gaming. *Id.* ¶¶ 31-33. Worker, relying on this language, highlights that the Compact requires the Pueblo to possess workers' compensation insurance. Thus, Worker contends, in agreeing to carry workers' compensation insurance, the Pueblo, PPGC, and PGI have all agreed to submit to the jurisdiction of the WCA to fully comply with the mandates of the provisions set forth in the Act and have waived their sovereign immunity with respect to the WCA's enforcement of the Act. We find this argument unpersuasive.

**{26}** The compact language at the heart of *Doe* clearly delineated that with respect to personal injury claims by visitors to the Santa Clara Pueblo gaming facilities, state district courts had jurisdiction. *Id.* ¶ 8 (stating that "for the limited purpose of personal injury actions involving visitor safety, the parties to the Compact agreed to state court jurisdiction"). In contrast, the compact language at issue in this case merely states that the Pueblo shall provide "to all employees of a gaming establishment employment benefits, including, at a minimum . . . workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable state programs." Noticeably absent from this language is any identification of where jurisdiction might lie when and if a workers' compensation claim is filed by an employee of PGI. *Doe* is thus

9

inapplicable. Ultimately, we understand Worker to contend that the Pueblo, PPGC, and PGI have implicitly submitted themselves to the jurisdiction of the WCA by virtue of having agreed to provide workers' compensation insurance. This proposition was previously addressed and rejected by this Court. *See Sanchez*, 2005-NMCA-003, ¶¶ 17-18 ("Plaintiff urges th[is] Court to hold that [the d]efendant's voluntary participation in New Mexico's workers' compensation program serves as a waiver of immunity . . . [W]e conclude that waivers of sovereign immunity cannot be created by implication through activities such as participation in the state's workers' compensation program.").

{27}   Worker's final argument seems simply an appeal to common sense:

> [T]he Pueblo of Pojoaque can not [sic] assert sovereign immunity and[/]or lack of subject matter jurisdiction with respect to some provisions of the New Mexico Workers['] Compensation Statute when it both participated in extensive proceedings before the WCA and purchased an insurance policy for workers['] compensation benefits filed at the WCA for its employees.

We disagree with the latter portion of Worker's argument that the purchasing of a workers' compensation insurance policy implicitly requires a tribe or tribal entity to surrender to state court jurisdiction. Our discussion of *Sanchez* and our conclusion that voluntary participation in workers' compensation does not act as a waiver of sovereign immunity sufficiently disposes of this contention. However, there is merit to Worker's assertion that PGI, having submitted to the jurisdiction of the WCA and complied with certain provisions of the WCA, cannot assert sovereign immunity with respect to other portions of the Act.

{28}   Throughout all of the proceedings, Defendants have consistently maintained that the decision to suspend and revoke Worker's gaming license was carried out by PPGC and that PPGC had never, during the course of any proceedings with respect to Worker, waived its sovereign immunity. We agree. The WCJ correctly found that PPGC possesses sovereign immunity and never waived that immunity during the proceedings before the WCA. However, we do not interpret this finding to conflict with the conclusion that PGI has waived its sovereign immunity. As we noted above, incorporated tribal entities are free to waive their immunity independent of the tribe itself and the other tribal entities derived from that tribe. *See Sanchez*, 2005-NMCA-003, ¶ 6. Defendants explicitly note in their answer brief that

> PGI Inc. chose [not to] raise the defense of sovereign immunity during the initial WCA benefits hearing because the issue was Worker/Appellant's employment benefits. In contrast, the Pueblo of

10

> Pojoaque and the PPGC raised sovereign immunity after the issue became the regulatory and adjudicatory functions of the PPGC when considering whether the Worker/Appellant's conduct was suitable to hold a Class III gaming license within the Pueblo of Pojoaque.

Having previously established that the immunity of tribal entities is possessed independently by each entity, Defendant's statement amply demonstrates that although PPGC and the Pueblo are immune from suit in this matter, PGI waived its sovereign immunity with respect to the adjudication of Worker's claims. Accordingly, although neither the WCA nor this Court may order PPGC to reissue Worker his former employment license, we do not believe this precludes the WCJ from ordering PGI to rehire Worker.

## 2. Rehire Provision

**{29}** Section 52-1-28.2(B) prohibits employers from engaging in retaliatory firings and requires employers to rehire workers when they engage in such activity. The language of that provision is as follows: "Any person who discharges a worker in violation of Subsection A of this section *shall rehire* that worker pursuant to the provisions of the Workers' Compensation Act . . . and the New Mexico Occupational Disease Disablement Law . . . provided the worker agrees to be rehired." *Id.* (emphasis added). The record reflects that the WCJ found that Worker was discharged in violation of Section 52-1-28.2(A).

**{30}** As noted by our Supreme Court, by enacting Section 52-1-28.2(B), "the [L]egislature expressly set out the clear mandate" that the act of retaliatory discharge is a clear violation of public policy. *Michaels v. Anglo Am. Auto Auctions, Inc.*, 117 N.M. 91, 92, 869 P.2d 279, 280 (1994). The remedy set forth by the Legislature for a violation of this public policy is equally clear: mandatory rehiring. The language in Section 52-1-28.2(B) specifically states that an employer who engages in retaliatory discharge "shall rehire" that employee. The use of the word "shall" imposes a mandatory, not discretionary, requirement. *See* NMSA 1978, § 12-2A-4(A) (1997) (explaining that "'[s]hall' and 'must' express a duty, obligation, requirement or condition precedent"). That the Legislature implemented a mandatory remedy in this circumstance follows naturally from the fact that, as noted by the Supreme Court of Hawaii, anti-retaliation provisions in workers' compensation laws are critical to the very solvency of workers' compensation regimes.

> The purpose of [the anti-retaliation] statute is to preserve the integrity of the workers' compensation law by protecting employees from retaliatory discharges. If an employer could, with impunity, coerce an employee into foregoing his rights, the employer would be

11

able to destroy the function of the law and circumvent an obligation imposed upon him by the [L]egislature.

*Puchert v. Agsalud*, 677 P.2d 449, 457 (Haw. 1984).

**{31}** Given the mandatory language of Section 52-1-28.2(B), the seriousness of the public policy at issue, and the conclusiveness of the finding by the WCJ that Worker's employment was terminated as a consequence of his filing a claim with the WCA, this Court concludes that PGI must rehire Worker. As noted in our earlier discussion of the principles of sovereign immunity, sovereign immunity does not preclude this Court from issuing such an order to PGI. We are confident that Section 52-1-28.2(B) provides the WCJ with authority to require PGI to comply with such an order because, as the Ohio court of appeals noted, "one may infer that the intent of the [retaliatory discharge provision] is to return the employee to the same position as he would have been had he not been discharged." *Mechling v. K-Mart Corp.*, 574 N.E.2d 557, 559 (Ohio Ct. App. 1989). As we previously stated, given the unique facts presented in this matter, this requires PGI to provide Worker with a position of employment that is substantially equivalent to the position he formerly held in terms of pay and benefits. The WCJ concluded that he was prevented from ordering PGI to rehire Worker, as is required under Section 52-1-28.2(B), because such an order would require PPGC to reissue Worker a gaming license. On this record, we are in no position to consider details such as this that might be involved in rehiring Worker. We conclude only that, given PGI's violation of Section 52-1-28.2(B), PGI must rehire Worker in accordance with the mandatory provisions of that statute.

## C.    Exhaustion of Tribal Remedies

**{32}** The Pueblo and PPGC contend that given the "unique nature of licensing in gaming," this Court should adopt the exhaustion rule set forth in *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845 (1985). Having already determined that the Pueblo and PPGC possess sovereign immunity which has not been waived, we do not reach Defendants' argument concerning exhaustion of tribal remedies as it relates to gaming licenses.

## D.    Adequacy of The Bad Faith and Retaliatory Discharge Remedies

**{33}** Worker next argues that the damages available under the WCA for a worker subjected to a retaliatory discharge and bad faith claim processing by an employer are "grossly inadequate." He asserts that this Court should interpret Section 52-1-28.2 to require Worker's employer to pay Worker "all the lost wages the [Worker] suffer[ed] as a result of the retaliatory discharge." "Statutory interpretation is an issue

of law, which we review de novo." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50.

**{34}** In support of his argument, Worker relies heavily on *Michaels*, where our Supreme Court instructed that the application of Section 52-1-28.2 should be liberally construed and adopted the tort of retaliatory discharge as a remedy available independent of the remedies provided under the Act, which are otherwise exclusive. *Michaels*, 117 N.M. at 94, 869 P.2d at 282. Worker's reliance on *Michaels* to support his argument is misplaced. That case itself resulted in the expansion of available remedies to a worker subjected to a retaliatory discharge by authorizing workers to pursue a tort action for retaliatory discharge in the district courts. *Id.* The Court's recognition of the independent tort action was premised, in part, on the observation that the harm caused by a retaliatory discharge includes much more than the mere loss of employment.

> A worker wrongfully discharged, even if eventually rehired, will incur damages in the form of lost wages from the date of discharge to the date of rehiring. If the issue is contested it could take up to a year or more before he or she is reemployed. Additionally, if the employee were to search for a new job, there would be the cost and inconvenience of searching for a new job or moving costs. Awarding civil damages not only vindicates the state's interest in enforcing public policy but also adequately redresses the harm to the individual naturally flowing from the violation of public policy.

*Id.* at 93, 869 P.2d at 281. The above clearly demonstrates that *Michaels* provided the remedies that Worker argues this Court should interpret Section 52-1-28.2 to include by implication. Accordingly, we reject his request to interpret that section to include remedies beyond those expressly provided in the Act.

## E. Attorney Fee Cap

**{35}** Finally, Worker argues that the cap on attorney fees in Section 52-1-54(I) is unconstitutional because Section 52-1-54(J) requires that these fees be borne both by the worker and his employer equally. Worker asserts that "[i]t is immaterial whether one uses the rational basis or intermediate scrutiny test[;] . . . no governmental interest is served when a claimant who wins his case pays his attorney more money than he wins and loses his job and the bad faith actor [e]mployer escapes virtually unscathed." We apply de novo review. *See generally New Mexicans for Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 45, 138 N.M. 785, 126 P.3d 1149 ("We review constitutional challenges to a statute de novo.").

13

**{36}** Worker acknowledges that our Supreme Court has previously addressed and rejected challenges to the constitutionality of the fee limitations in Section 52-1-54(I). *See Wagner v. AGW Consultants*, 2005-NMSC-016, ¶ 3, 137 N.M. 734, 114 P.3d 1050. Nevertheless, Worker requests that, rather than following the majority opinion in *Wagner*, we instead adopt the dissenting opinion in which Justice Bosson argued that the fee cap was unconstitutional even under intermediate level of scrutiny. *Id.* ¶ 36 (Bosson, J., concurring in part and dissenting in part). We have no authority to do as Worker requests. *See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973) ("[A] court lower in rank than the court which made the decision invoked as a precedent cannot deviate therefrom and decide contrary to that precedent[.]" (internal quotation marks and citation omitted)). While we acknowledge that Worker's challenge to both the fee splitting provision in Section 52-1-54(J) and the attorney fees cap distinguishes his argument somewhat from that raised by the worker in *Wagner*, we nonetheless conclude that the outcome in *Wagner* is controlling and determinative. There, our Supreme Court observed that the worker had failed to submit crucial evidence, including arguments that the fee cap provision

> is an arbitrary and irrational means to achieve the [s]tate's objectives. For instance, there is no evidence in the record to suggest either what percentage of claimants approach or reach the fee limitation at the administrative level, or the typical amount of time expended by attorneys either at the administrative level or on appeal . . . [or that the amount specified in the fee cap provision] has been insufficient to cover workers' attorney fees at the administrative and appellate levels.

*Wagner*, 2005-NMSC-016, ¶ 28. Absent such evidence, the *Wagner* Court was compelled to deny the constitutional challenge advanced in that case. *Id.* ¶¶ 29, 31. Similarly, aside from his bare assertions that the fee splitting and fee cap provisions render the attorney fees award provisions "unfair and unjust," Worker has equally failed to adequately explain how the fee splitting provision in connection with the attorney fee cap is not rationally related to the purposes of the state's objectives. Accordingly, we reject Worker's arguments.

## III. CONCLUSION

**{37}** We hold that Section 52-1-28.2(B) provides the WCJ with authority to require PGI to rehire Worker, and we reverse the WCJ's findings to the extent they contradict this conclusion. We affirm on the remainder of the issues presented on appeal.

**{38}   IT IS SO ORDERED.**

_____

14

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**

Topic Index for *Martinez v. Cities of Gold Casino,* No. 28,762

**AE**                  **APPEAL AND ERROR**
AE-RM          Remand

**EL**                  **EMPLOYMENT LAW**
EL-TE              Termination of Employment

**GV**                  **GOVERNMENT**
GV-SI          Sovereign Immunity

**IL**                  **INDIAN LAW**
IL-GA         Gaming
IL-TJ          Tribal and State Authority and Jurisdiction

**WC**                  **WORKERS COMPENSATION**
WC-AF        Attorney Fees
WC-RT        Retaliation
WC-WG      Workers' Compensation, General

**ST**                  **STATUTES**
ST-IP         Interpretation