2006-NMCA-020

128 P.3d 513

**R & R DELI, INC., Plaintiff–Appellant,**

v.

**SANTA ANA STAR CASINO; Tamaya Enterprises, Inc.; the Pueblo of Santa Ana; Conrad Granito, General Manager of Santa Ana Star Casino; Aaron Armijo, Chairman of Tamaya Enterprises, Inc., and Leonard Armijo, Governor of Pueblo of Santa Ana, Defendants–Appellees.**

No. 25,582.

Court of Appeals of New Mexico.

Dec. 21, 2005.

Certiorari Denied, No. 29,625, Feb. 1, 2006.

Chris Lucero, Jr., Albuquerque, for Appellant.

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP, Richard W. Hughes, Santa Fe, for Appellees.

## OPINION

PICKARD, J.

{1} In this case, we determine whether limited waivers of tribal sovereign immunity in a commercial lease and in a pueblo's gaming compact with the State are applicable to a suit based in contract and tort brought by a lessee of property located on tribal lands. Holding the waivers inapplicable, we affirm the trial court's grant of Defendants' motion to dismiss.

### STANDARD OF REVIEW AND FACTS

{2} When reviewing a trial court's grant of a motion to dismiss, we accept as true the facts pleaded in the complaint, and we review de novo the trial court's application of the law to those facts. *Envtl. Control, Inc. v. City of Santa Fe*, 2002–NMCA–003, ¶ 6, 131 N.M. 450, 38 P.3d 891. In its complaint, Plaintiff alleged the following facts. Plaintiff entered into a lease with Tamaya Enterprises, Inc. (TEI), a federally chartered corporation wholly owned by the Pueblo of Santa Ana. The lease contemplated that Plaintiff would operate a restaurant located in the Santa Ana Star Casino. When the lease was entered into, the Pueblo also issued Plaintiff a liquor license.

{3} The lease stated that nothing contained in it would be deemed a waiver of TEI's sovereign immunity from suit, but that the TEI Board of Directors would adopt a resolution providing "a limited waiver of sovereign immunity and consent to be sued in the Pueblo of Santa Ana Tribal Court for the limited purpose of determining and enforcing the obligations of the parties under this Lease." The lease also stated that there would be no waiver of sovereign immunity with regard to the Pueblo itself.

{4} The TEI Board of Directors subsequently adopted a resolution pursuant to the lease, which states that "the Board of Directors hereby approves a limited waiver of sovereign immunity and consents to be sued in the Pueblo of Santa Ana Tribal Court." The resolution also states that the waiver is applicable only to "actions seeking one [or] more of the following remedies: injunctive relief, declaratory judgment, or specific performance."

{5} After Plaintiff had been operating the restaurant for approximately one year, the Pueblo declined to renew Plaintiff's liquor license, stating that Plaintiff was in violation of the Santa Ana Liquor Code. Plaintiff had received no prior notice of any violations and was unaware of any investigations into the matter. Because the lease required Plaintiff to maintain a liquor license, Plaintiff believed that the Pueblo had purposefully prevented the renewal of the license so that it could take over the restaurant, which had been very successful. Pueblo officials also told Plaintiff that the decision was made for "political reasons."

{6} Plaintiff brought suit against the Pueblo, TEI, the casino, and several Pueblo officials. Plaintiff alleged breach of lease, intentional interference with contract, discrimination and violation of state constitutional rights, constructive fraud, negligent misrepresentation, prima facie tort, breach of the covenant of good faith, conspiracy, and fraud. Defendants filed a joint motion to dismiss, arguing that nothing in the lease agreement, resolution, or the Pueblo's gaming compact with the State waived tribal sovereign immunity for purposes of the suit. The trial court dismissed the complaint, finding that Plaintiff's claims were barred by sovereign immunity and were within the exclusive jurisdiction of the Santa Ana Tribal Court.

### DISCUSSION

{7} On appeal, Plaintiff argues that Defendants waived sovereign immunity from suit in the lease agreement and in the gaming compact with the State. Plaintiff also appears to argue a separate waiver regarding alleged violations of constitutional rights.

Because Plaintiff does not make different arguments with regard to the various Defendants, we do not distinguish between them, and we refer to them collectively as "the Pueblo."

{8} The Pueblo argues that the suit is barred because there is no waiver of immunity in either the lease or the gaming compact and because Plaintiff's claims fall within the exclusive jurisdiction of the Santa Ana Tribal Court. We hold that the trial court lacked jurisdiction under either of the alternative theories argued by Plaintiff because the Pueblo did not waive its sovereign immunity in either the lease or the gaming compact. Thus, we need not address whether tribal court jurisdiction is exclusive.

## A. THE LEASE AGREEMENT AND RESOLUTION WAIVER

{9} Plaintiff argues on appeal that "Defendants specifically waived sovereign immunity as reflected in [the lease agreement and resolution] for any claims concerning the lease." We disagree.

■ {10} It has long been recognized that Indian tribes have the same common-law immunity from suit as other sovereigns. *Sanchez v. Santa Ana Golf Club, Inc.*, 2005–NMCA–003, ¶ 5, 136 N.M. 682, 104 P.3d 548. A tribe is free to waive its sovereign immunity, but such waivers must be express and unequivocal. *See id.* Because a tribe need not waive immunity at all, it is free to "prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." *Mo. River Servs., Inc. v. Omaha Tribe*, 267 F.3d 848, 852 (8th Cir.2001) (internal quotation marks and citations omitted). Any such conditions or limitations "must be strictly construed and applied." *Id.* (internal quotation marks and citation omitted).

■ {11} When a tribe is protected by sovereign immunity, a state court lacks jurisdiction to hear a suit. *See Gallegos v. Pueblo of Tesuque*, 2002–NMSC–012, ¶ 7, 132 N.M. 207, 46 P.3d 668 ("Without an unequivocal and express waiver of sovereign immunity or congressional authorization, state courts lack the power to entertain lawsuits against tribal entities."); *see also Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) ("Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe.").

■ {12} As explained above, the Pueblo in this case did decide to waive its sovereign immunity under limited circumstances. The resolution issued pursuant to the lease agreement states as follows:

[T]he Board of Directors hereby approves a limited waiver of sovereign immunity and consents to be sued in the Pueblo of Santa Ana Tribal Court, should an action be commenced to determine and enforce the obligations of the parties under this Lease, provided that the foregoing waiver of sovereign immunity with respect to TEI's obligations under the Lease is limited to actions seeking one [or] more of the following remedies: injunctive relief, declaratory judgment, or specific performance.

■ {13} In examining this waiver, we are guided by the above principles of sovereign immunity, as well as by ordinary principles of contract interpretation. When a contractual provision is unambiguous, we only apply it and do not interpret it. *Richardson v. Farmers Ins. Co.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991). Here, we need not interpret or construe the waiver of immunity in the resolution because we find it to be unambiguous. By its clear terms, the waiver provides a consent to suit only if the suit (1) is brought in tribal court and (2) seeks "injunctive relief, [a] declaratory judgment, or specific performance."

{14} Moreover, even if we were to interpret or construe the provision, we do not see how it could plausibly be read to encompass, as Plaintiff argues, "any claims concerning the lease." Plaintiff offers no support for its position that we should construe the waiver to encompass a suit for damages (rather than injunctive or declaratory relief) in state (rather than tribal) court. The Pueblo clearly limited the waiver to claims brought in tribal court for injunctive and declaratory relief, and those limitations must be strictly construed. *See Mo. River Servs., Inc.*, 267

F.3d at 852. Thus, we hold that the lease agreement and resolution do not waive the Pueblo's sovereign immunity with regard to this suit.

## B. THE GAMING COMPACT WAIVER

{15} Plaintiff next argues that its suit is permissible because the Pueblo waived its sovereign immunity in the gaming compact it entered into with the State of New Mexico. As an initial matter, the parties dispute which version of the gaming compact is applicable. Plaintiff contends that the 1997 version of the gaming compact is applicable because it is a "current statute." Plaintiff notes that the 2001 gaming compact, relied on by the Pueblo, is *"not a part of the state statutes."* Plaintiff further argues that the 1997 gaming compact is still valid "based on its history of use by the Pueblo of Santa Ana and the State of New Mexico," and that the waivers of sovereign immunity in the 1997 gaming compact "cannot be deluded [sic], since those waivers were the consideration which the gaming tribes gave for the contractual relationship with the state as contained in the compacts."

{16} The Pueblo asserts that the 2001 version of the gaming compact is currently in effect because it superceded the 1997 version. The 2001 gaming compact was signed by Governor Johnson on October 2, 2001, signed by the Governor of the Pueblo of Santa Ana on October 1, 2001, and approved by the New Mexico Legislature. *See* NMSA 1978, § 11–13–1, compiler's note (2004). Section 9(D) of the 2001 gaming compact states:

> Upon the publication of notice of the Secretary [of the Interior's] affirmative approval of this Compact in the Federal Register, the Predecessor Agreements shall be and become null and void, and of no further effect, ... and the terms and provisions of this Compact shall go into full force and effect, fully supplanting and replacing the Predecessor Agreements.

Section 2(L) defines the term "Predecessor Agreements" to include the 1997 gaming compact. The Secretary of the Interior published an official notice of approval of the 2001 gaming compact in the Federal Register on December 14, 2001. Notice of approved Tribal–State Compacts, 66 Fed.Reg. 64,856 (Dec. 14, 2001).

{17} Under these circumstances, we agree with the Pueblo that the 2001 gaming compact is applicable in this case because it superceded the 1997 gaming compact. We reject Plaintiff's argument that the 1997 gaming compact is still valid just because it is still in the New Mexico Statutes Annotated.

{18} Plaintiff argues that even if the 2001 gaming compact is in effect, it also contains a waiver of the Pueblo's sovereign immunity that is applicable to this case. Section 8(A) of the 2001 gaming compact, entitled "Policy Concerning Protection of Visitors," states as follows:

> The safety and protection of visitors to a Gaming Facility is a priority of the Tribe, and it is the purpose of this Section to assure that any such persons who suffer bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise have an effective remedy for obtaining fair and just compensation. To that end, in this Section, and subject to its terms, the Tribe agrees to carry insurance that covers such injury or loss, agrees to a limited waiver of its immunity from suit, and agrees to proceed either in binding arbitration proceedings or in a court of competent jurisdiction, at the visitor's election, with respect to claims for bodily injury or property damage proximately caused by the conduct of the Gaming Enterprise. For purposes of this Section, any such claim may be brought in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that IGRA [the Indian Gaming Regulatory Act] does not permit the shifting of jurisdiction over visitors' personal injury suits to state court.

Section 8(D) states that the Pueblo "waives its defense of sovereign immunity in connection with any claims for compensatory damages for bodily injury or property damage up to the amount of fifty million dollars ($50,-000,000) per occurrence asserted as provided in this section."

{19} Under these provisions, the Pueblo's sovereign immunity from suit will be waived in this case only if (1) Plaintiff is a "visitor" as that term is used in the gaming compact and (2) the gaming compact's use of the phrase "bodily injury and property damage" contemplates suits like the present one alleging breach of contract and tortious business activity. We hold that Plaintiff is not a "visitor" under the gaming compact and that the waiver of sovereign immunity in the gaming compact was not intended to encompass claims like those pleaded in this case.

{20} Gaming compacts are contracts between two parties, and we treat them as such. *Gallegos*, 2002–NMSC–012, ¶ 30, 132 N.M. 207, 46 P.3d 668. When interpreting a contract, our primary goal is to "ascertain the intentions of the contracting parties." *Id.* (internal quotation marks and citations omitted). When a contractual provision is unambiguous, we need not engage in construction or interpretation of the provision's language. *Richardson*, 112 N.M. at 74, 811 P.2d at 572 ("Absent ambiguity, provisions of a contract need only be applied, rather than construed or interpreted.").

{21} We find the waiver provision in the gaming compact to be unambiguous. By its plain language, the waiver is geared toward personal injury claims brought by casino patrons. We also note four statements in Section 8 that support this conclusion. First, Section 8 consistently uses the phrase "bodily injury" in conjunction with the phrase "property damage." The juxtaposition of these terms indicates that the drafters of the gaming compact were referring to physical harms to persons or property. (We note the possibility that the drafters also intended the waiver to refer to related claims, such as emotional distress and loss of consortium. Because that possibility is not raised by this case, we expressly decline to address it.) Second, Section 8(A) begins by referencing the importance of "the safety and protection" of visitors. The use of the word "safety" again indicates that the drafters were referring to physical damage to persons or property when they worded the waiver. Third, the final sentence of Section 8(A) states that the claims referenced in that section may be brought in state court "unless it is finally determined ... that IGRA does not permit the shifting of jurisdiction over *visitors' personal injury suits* to state court." *Id.* (emphasis added). Section 8's reference to the type of claims it encompasses as "personal injury" claims further supports our interpretation of the waiver.

{22} Finally, Section 8(A) refers to "visitors to a Gaming Facility" and then states that the purpose of the section is "to assure that any such persons who suffer bodily injury or property damage" have a remedy. The term "persons" is sometimes used to refer to corporations as well as natural persons. *See, e.g., Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 881 n. 9, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) ("It is well established that a corporation is a 'person' within the meaning of the Fourteenth Amendment."). However, corporations clearly do not suffer "bodily injury." Thus, the gaming compact's reference to "persons who suffer bodily injury" further supports our conclusion that the waiver of sovereign immunity was intended to cover only claims for physical injuries to persons and property and not claims like the present ones, which involve contract law and business torts.

{23} With regard to the proper definition of the word "visitor" as used in the gaming compact, Plaintiff argues that "[t]here is no language in [the gaming compact] ... which limits the definition of 'visitors' to exclude commercial persons or corporations which do business with the casinos." Plaintiff also relies on a New Mexico Uniform Jury Instruction, which defines a visitor as "a person who enters or remains upon the premises with the [express] [or] [implied] permission of the [owner] [occupant] of the premises." UJI 13–1302 NMRA. Plaintiff notes that, in the context of negligence actions, our Supreme Court has eliminated the distinction between licensees and business visitors. *See Ford v. Bd. of County Comm'rs*, 118 N.M. 134, 139, 879 P.2d 766, 771 (1994).

{24} We agree that there is no specific language in the gaming compact explicitly limiting the waiver to personal injury-type claims. We also agree with Plaintiff that it falls within the definition of a "visitor" under

the cited UJI, and we believe that Plaintiff correctly reads the *Ford* case. However, in determining the meaning of contractual provisions, our primary duty is to ascertain the intent of the drafters. *Gallegos*, 2002–NMSC–012, ¶ 30, 132 N.M. 207, 46 P.3d 668. As we have shown in our analysis above, the drafters of the gaming compact intended to provide a limited waiver of sovereign immunity for purposes of providing a remedy to casino patrons who suffer physical injury to their persons or property. Plaintiff has not shown how the definition used in the UJI or the distinction between licensees and business visitors eliminated in *Ford* would inform our inquiry into the intent of the drafters of the gaming compact.

{25} Moreover, we agree with the policy rationale asserted by the Pueblo for limiting the term "visitor" to casino patrons and guests. The Pueblo notes that "while an ordinary customer has no opportunity to negotiate the terms upon which he or she comes onto the gaming facility premises, a contractor or vendor has every such opportunity[.]" In view of this observation, it makes sense that the State and the Pueblo would have been concerned with the safety of ordinary customers, rather than the financial well-being of entities who enter into business transactions with the Pueblo and can be assumed to be capable of protecting their own interests. For the above reasons, we reject Plaintiff's contention that it should be considered a "visitor" to whom the waiver applies.

{26} In support of its argument that the phrase "bodily injury and property damage" encompasses the type of claims brought in this case, Plaintiff argues that its contract with the Pueblo created a "property right" that was "damage[d]" by the Pueblo's actions. Plaintiff cites numerous cases holding that intangibles such as rights under a contract can be "property rights." *See, e.g., Mills v. N.M. Bd. of Psych. Examiners*, 1997–NMSC–028, ¶¶ 13–15, 123 N.M. 421, 941 P.2d 502 (holding that professional license constitutes a "constitutionally protected property interest" for purposes of both procedural and substantive due process analysis); *Bd. of Educ. v. Harrell*, 118 N.M. 470, 477, 882 P.2d 511, 518 (1994) ("[I]nterests in

government benefits will be recognized as constitutional 'property' if the person can be deemed 'entitled' to them." (citation omitted)); *Scott v. Bd. of Comm'rs*, 109 N.M. 310, 312, 785 P.2d 221, 223 (1989) (noting that written contract with political subdivision creates a "cognizable property interest" but does not necessarily form the basis for a claim under 42 U.S.C. § 1983); *Moongate Water Co., Inc. v. State*, 120 N.M. 399, 404, 902 P.2d 554, 559 (Ct.App.1995) (noting that for purposes of Fourteenth Amendment, property interests are generally created by state law).

{27} All of the cases cited by Plaintiff involve due process claims asserted against state actors. The Pueblo is not a state actor that is bound by the federal constitution or the New Mexico Constitution to afford due process to those with whom it conducts business. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (noting that tribes are generally not bound by any constitutional provisions that are "limitations on federal or state authority"); *Twin Cities Chippewa Tribal Council v. Minn. Chippewa Tribe*, 370 F.2d 529, 533 (8th Cir.1967) (holding that the Due Process Clause has "no application to actions of Indian tribes, acting as such" (cited with approval in *Santa Clara Pueblo*, 436 U.S. at 56 n. 7, 98 S.Ct. 1670)).

{28} However, in citing the above-mentioned due process cases, Plaintiff does not appear to argue that the Pueblo is a state actor who has violated its due process rights. Rather, Plaintiff seems to analogize the concept of a "property right" for purposes of due process analysis to the contractual rights at stake in this case. We are not persuaded by this analogy. As explained above, our duty is to ascertain the intent of the gaming compact drafters, and we are confident that their intent was to provide a remedy for casino patrons who suffer physical damage to their persons or property. Plaintiff has not shown how the definition of "property" in the due process context is relevant to our inquiry regarding the intent of the gaming compact drafters. Thus, we reiterate our holding that Plaintiff's claims do not fall under the waiver

contained in Section 8 of the gaming compact.

## C. LACK OF ANY WAIVER FOR CLAIMS ALLEGING VIOLATIONS OF CONSTITUTIONAL RIGHTS

 {29}    Finally, Plaintiff argues that in forcing it out of its business, the Pueblo has committed illegal discrimination on the basis of race and national origin.  Plaintiff appears to claim that because "the Compact specifically requires the Defendants to not discriminate based on race and national origin," the Pueblo has waived its sovereign immunity with regard to discrimination claims.  Plaintiff is correct that the gaming compact requires the Pueblo to adopt laws "prohibiting the Tribe, the Gaming Enterprise and a Management Contractor from discriminating in the employment of persons to work for the gaming Enterprise or in the Gaming Facility on the grounds of race, color, national origin, gender, sexual orientation, age or handicap[.]"

{30}    As the Pueblo points out, however, Plaintiff has not demonstrated how it is a "person" who "work[s] for" the Gaming Enterprise.  According to Plaintiff's allegations, Plaintiff is a corporation that entered into a lease and contractual agreement with the Pueblo.  However, even if the quoted provision were applicable to an entity in Plaintiff's position.  Plaintiff has not indicated the basis on which it believes the provision waives the Pueblo's sovereign immunity with respect to claims for discrimination.  Because waivers of sovereign immunity must be express and unequivocal, *see Sanchez*, 2005–NMCA–003, ¶ 5, 136 N.M. 682, 104 P.3d 548, and because the above-quoted provision makes no mention whatsoever of a waiver, we decline to hold that the provision constitutes a valid waiver of the Pueblo's sovereign immunity from suit.

## CONCLUSION

{31}    Because neither the lease agreement nor the gaming compact waived the Pueblo's sovereign immunity with regard to this suit, we hold that the trial court lacked jurisdiction, and we affirm the grant of the motion to dismiss.

{32}    **IT IS SO ORDERED.**

BUSTAMANTE, C.J. and ALARID, J., concur.