# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **April 9, 2018**

**NO. A-1-CA-35520**

**GLORIA MENDOZA,**

      Worker-Appellant,

v.

**ISLETA RESORT AND CASINO
and HUDSON INSURANCE,**

      Employer/Insurer-Appellees,

and

**TRIBAL FIRST,**

      Appellee,

and

**STATE OF NEW MEXICO UNINSURED
EMPLOYERS' FUND,**

      Statutory Third Party.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Leonard J. Padilla, Workers' Compensation Judge**

LeeAnn Ortiz
Albuquerque, NM

for Appellant

Barnhouse Keegan Solimon & West LLP
Christina S. West
Los Ranchos de Albuquerque, NM

for Appellees

**OPINION**

**VIGIL, Judge.**

{1}     Gloria Mendoza (Worker), an employee at Isleta Pueblo Resort and Casino (Isleta Casino), appeals orders of the Workers' Compensation Judge (WCJ) dismissing her workers' compensation complaint and denying her motion to reconsider a prior order to name the proper parties to the case. Worker contends that the WCJ erred in dismissing her complaint on grounds of tribal sovereign immunity based on an express and unequivocal waiver contained in the 2015 Indian Gaming Compact; that even assuming Isleta Casino enjoys sovereign immunity in this case, the defense does not extend to Isleta Casino's non-tribal entity insurer and third-party administrator; and that the WCJ erred in denying Worker's motion to reconsider its order granting leave to file a second amended workers' compensation complaint naming Isleta Casino's insurer and third-party administrator as parties to the case. For the reasons that follow, we reverse and remand for further proceedings.

**BACKGROUND**

**A.     The New Mexico Indian Gaming Compacts and Workers' Compensation**

{2}     In 1988, the United States Congress enacted the Indian Gaming Regulatory Act (IGRA), Pub. L. No. 100-497, 102 Stat. 2467 (1988) (codified at 25 U.S.C. §§ 2701-2721 (2012)), which provides a statutory basis for Indian tribes to establish gaming

enterprises in Indian Country conducted pursuant to state-tribal compacts. *See* 25 U.S.C. § 2702; 25 U.S.C. § 2710(d)(1), *invalidated in part by Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 47 (1996).

{3}    In 1995 and pursuant to IGRA, the Governor of the State of New Mexico, Gary Johnson, unilaterally entered into state-tribal gaming compacts with certain tribes. *See State ex rel. Clark v. Johnson*, 1995-NMSC-048, ¶ 8, 120 N.M. 562, 904 P.2d 11. Concluding that it violated separation of powers under the New Mexico Constitution for Governor Johnson to enter into the state-tribal gaming compacts without legislative approval, our Supreme Court held in *Johnson* that the 1995 Indian Gaming Compacts were without legal effect. *Id.* ¶¶ 46-50.

{4}    Based on the decision in *Johnson*, Chapter 190, Section 1 of New Mexico laws of 1997 established the first legally effective state-tribal gaming compact in New Mexico. Section 4(B)(6) of the 1997 Indian Gaming Compact addressed workers' compensation for tribal gaming enterprise employees by stating that:

> [T]he Tribe shall adopt laws . . . providing to all employees of a gaming establishment employment benefits, including, at a minimum, sick leave, life insurance, paid annual leave and medical and dental insurance as well as providing unemployment insurance and workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable state programs[.]

{5} In 2001 a new and revised Indian Gaming Compact was adopted. S.J. Res. 37, 45th Leg., 1st Sess. (N.M. 2001). The 2001 Indian Gaming Compact included a version of Section 4(B)(6), which was identical to the 1997 Compact.

{6} The Indian Gaming Compact was revised again in 2007. S.J. Res. 21 , 48th Leg., 1st Sess. (N.M. 2007). Under the 2007 Indian Gaming Compact, Section 4(B)(6) was modified to add additional basic rights that tribal gaming enterprise employees must be afforded in the context of workers' compensation and how signatory tribes may elect to participate in the State of New Mexico's workers' compensation program. Section 4(B)(6) of the 2007 Indian Gaming Compact provided that:

> [T]he Tribe shall adopt laws . . . providing to all employees of a gaming establishment employment benefits, including, at a minimum, sick leave, life insurance, paid annual leave and medical and dental insurance as well as providing unemployment insurance and workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable state programs, *and which programs shall afford the employees due process of law and shall include an effective means for an employee to appeal an adverse determination by the insurer to an impartial forum, such as (but not limited to) the Tribe's tribal court, which appeal shall be decided in a timely manner and in an administrative or judicial proceeding and as to which no defense of tribal sovereign immunity would be available; and provided that to fulfill this requirement the Tribe may elect to participate in the State's program upon execution of an appropriate agreement with the State*[.]

(Emphasis added.)

3

{7} In 2015 the current version of the Indian Gaming Compact was adopted. S.J. Res. 19, 52nd Leg., 1st Sess. (N.M. 2015). With revisions emphasized below, the 2015 Indian Gaming Compact re-adopted in its entirety the 2007 amendment to Section 4(B)(6). Section 4(B)(6) of the 2015 Indian Gaming Compact provides:

> [T]he Tribe shall adopt laws . . . *requiring the Tribe, through its Gaming Enterprise or through a third-party entity, to provide to* all employees of the Gaming Enterprise employment benefits, including, at a minimum, sick leave, life insurance, *paid annual leave or paid time off* and medical and dental insurance as well as providing unemployment insurance and workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable State programs, and which programs shall afford the employees due process of law and shall include an effective means for an employee to appeal an adverse determination by the insurer to an impartial forum, such as (but not limited to) the Tribe's Tribal Court, which appeal shall be decided in a timely manner and in an administrative or judicial proceeding and as to which no defense of tribal sovereign immunity would be available; and provided that to fulfill this requirement the Tribe may elect to participate in the State's program upon execution of an appropriate agreement with the State[.]

(Emphases added.) The Pueblo of Isleta has been a signatory to the 2015 Indian Gaming Compact since July 28, 2015. *See* Indian Gaming, 80 Fed. Reg. 44,992-01 (July 28, 2015).

**B.      Parties in Interest**

{8} Worker, the injured worker and complainant seeking work injury benefits from her employer in this case, is employed by and works as a custodial porter for Isleta Casino. Isleta Casino is a Class III tribal gaming enterprise located in the State of

4

New Mexico that is wholly owned and operated by the Pueblo of Isleta. At the time of Worker's work injury, Isleta Casino maintained workers' compensation insurance issued by Hudson Insurance Company (Hudson), a Delaware corporation. Tribal First, which functioned as the third-party administrator of Isleta Casino's workers' compensation insurance policy at the time of Worker's injury, is a program administered by the California corporation, Alliant Specialty Insurance Services, Inc. Finally, First Nations Compensation Plan, was a company that provided Indian tribes with workers' compensation coverage until 2009. In 2009, First Nations Compensation Plan ceased paying claims after being pulled into bankruptcy proceedings involving a related company whose principals were investigated for operating a "Ponzi scheme" and were convicted on charges of mail fraud.

**C.      Worker's Work Injury and Claim for Work Injury Benefits**

{9}      On August 24, 2015, Worker was injured at work while pushing chairs during her midnight shift at Isleta Casino. Worker suffered a torn meniscus in her right knee. Worker filed a notice of accident form with Isleta Casino, was sent to an urgent care clinic by Isleta Casino, and saw a doctor all within twenty-four hours of her accident.

{10}      On September 11, 2015, Worker received a letter signed by Erica Brown, an insurance adjuster for Tribal First (the Tribal First adjuster), which stated that Tribal

First would be handling her claim for work injury benefits on behalf of Isleta Casino. The letter continued that "[p]er Isleta Resort & Casino work injury program, claims are to be reported within 24 hours." The letter incorrectly asserted, "Since you did not report your claim timely per Isleta Resort & Casino['s] work injury program, your claim is denied." The letter concluded that if Worker disagreed with Tribal First's decision, she was required to submit a written request for appeal with Tribal First no later than thirty days after the date of the letter denying her work injury benefits.

{11} Worker responded by filing a workers' compensation complaint with the Workers' Compensation Administration (WCA), naming Isleta Casino and the Food Industry Self Insurance Fund of New Mexico (FISIF) as parties to the case. Worker then amended her complaint to add as parties Tribal First and the Uninsured Employers Fund of New Mexico (UEF). While the case was pending, a certificate of workers' compensation insurance was filed with the WCA, identifying Hudson as the workers' compensation liability insurance carrier for Isleta Casino at the time of Worker's accident.

{12} A mediation conference was then held, but the parties were not able to resolve the matter. Included in the mediator's observations and recommendations were that the WCA had jurisdiction to adjudicate Worker's case because Isleta Pueblo waived

6

tribal sovereign immunity, pursuant to Section 4(B)(6) of the 2015 Indian Gaming Compact, and that "[t]he behavior of the Tribal First adjuster raises a question of whether there is an enterprise to take tribes' money but pay no claims. . . . Such a course of behavior, even if true, is beyond the scope of the WCA. It would not be beyond the scope of appellate courts, were the case to go that far."

{13}     Counsel then entered an appearance on behalf of Isleta Casino and Tribal First in the case for the limited purpose of contesting the subject matter jurisdiction of the WCA to adjudicate Worker's claim and filed a Rule 1-012(B)(1) NMRA motion to dismiss on March 2, 2016, asserting tribal sovereign immunity. Attached to the motion were selected pages from an insurance policy produced by First Nations Compensation Plan purported by counsel for Isleta Casino, Hudson, and Tribal First to be the Pueblo's workers' compensation ordinance, and which counsel argued conferred on Isleta Pueblo exclusive jurisdiction over claims made under its workers' compensation insurance policy with Hudson. Subsequent proceedings brought to light that the purported workers' compensation ordinance was not in fact tribal law in force or effect for the Pueblo at the time of Worker's work injury.

{14}     The WCJ then entered an order granting an unopposed motion filed by Worker requesting leave to file a second amended complaint adding Hudson as a party and dismissing FISIF. However, without explanation, the order also dismissed Tribal

First. Worker moved for reconsideration of the WCJ's order, requesting that Tribal First remain a party in the case.

{15} The WCJ later issued orders, granting the motion to dismiss on grounds of sovereign immunity, relying on *Antonio v. Inn of the Mountain Gods Resort & Casino*, 2010-NMCA-077, 148 N.M. 858, 242 P.3d 425, and summarily denying the motion for reconsideration as moot. As a result, Worker's workers' compensation case was dismissed with prejudice. This appeal followed.

**DISCUSSION**

{16} Worker raises three issues on appeal: (1) that the WCJ erred in granting Isleta Casino's motion to dismiss for lack of subject matter jurisdiction on grounds of tribal sovereign immunity; (2) that the defense of tribal sovereign immunity does not extend to Isleta Casino's non-tribal workers' compensation insurer, Hudson, or third-party administrator, Tribal First; and (3) that the WCJ erred in denying her motion to reconsider its order granting her leave to file a second amended workers' compensation complaint naming Hudson and Tribal First as parties to the case.

**I.     The WCJ Erred in Granting Isleta Casino's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

{17} Worker first contends that Section 4(B)(6) of the 2015 Indian Gaming Compact contains an express and unequivocal waiver of sovereign immunity. Worker urges us to focus our attention to the language of Section 4(B)(6) added in 2007 and re-

8

adopted in the 2015 Indian Gaming Compact providing that employees of Isleta Pueblo's gaming enterprises "shall [be] afford[ed] . . . an impartial forum, such as (but not limited to) the Tribe's tribal court," and a judicial or administrative proceeding for appeals from adverse workers' compensation determinations in "which no defense of tribal sovereign immunity would be available[.]" (Emphasis omitted.) This language, Worker argues, demonstrates Isleta Pueblo's intent and agreement that either it or its gaming enterprise(s) waive tribal sovereign immunity in cases like hers—which challenge an adverse workers' compensation determination by Isleta Casino's workers' compensation insurer/third-party administrator.

**{18}** Isleta Casino in turn relies on this Court's opinions in *Antonio*, 2010-NMCA-077; *Martinez v. Cities of Gold Casino*, 2009-NMCA-087, 146 N.M. 735, 215 P.3d 44; and our non-precedential opinion in *Pena v. Inn of the Mountain Gods Resort & Casino*, No. A-1-CA-29799, mem. op. (N.M. Ct. App. Jan. 31, 2011) (non-precedential), to argue that "New Mexico courts have consistently applied the doctrine of tribal sovereign immunity to dismiss workers' compensation claims from the jurisdiction of state courts." Isleta Casino also contends that the language of Section 4(B)(6) of the 2015 Indian Gaming Compact does not constitute an express and unequivocal waiver of sovereign immunity. Rather, Isleta Casino argues that Section 4(B)(6) describes a contractual obligation, enforceable only by the parties to

9

the compact, requiring that Isleta Pueblo shall adopt laws that establish a process for resolving its gaming enterprise employees' workers' compensation claims.

**A.      Standard of Review**

{19}      In reviewing an appeal from an order granting or denying a motion to dismiss for lack of jurisdiction based on tribal sovereign immunity, review is de novo. *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 6, 132 N.M. 207, 46 P.3d 668; *see Sanchez v. Santa Ana Golf Club, Inc.*, 2005-NMCA-003, ¶ 4, 136 N.M. 682, 104 P.3d 548.

**B.      Section 4(B)(6) of the 2015 Indian Gaming Compact Contains an Express and Unequivocal Waiver of Sovereign Immunity**

{20}      "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Gallegos*, 2002-NMSC-012, ¶ 7 (internal quotation marks and citation omitted). These domestic dependent nations "have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *see Michigan v. Bay Mills Indian Cmty.,* ___ U.S. ___, ___, 134 S. Ct. 2024, 2030 (2014) ("Among the core aspects of sovereignty that [Indian] tribes possess . . . is the common-law immunity from suit[.]" (internal quotation marks and citation omitted)); *Hoffman v. Sandia Resort & Casino*, 2010-NMCA-034, ¶ 6, 148

N.M. 222, 232 P.3d 901 (stating that our Supreme Court has long "recognize[d] tribal sovereign immunity as a legitimate legal doctrine of significant historical pedigree").

{21} But tribal sovereign immunity is not absolute. *See Gallegos*, 2002-NMSC-012, ¶ 7. Article I, Section 8 of the United States Constitution confers on Congress "the ultimate authority over Indian affairs," which includes the ability to "expressly authorize suits against Indian tribes through legislation." *Gallegos*, 2002-NMSC-012, ¶ 7; *see Antonio*, 2010-NMCA-077, ¶ 10 (quoting *Kiowa Tribe of Okla. v. Mfg. Techs, Inc.*, 523 U.S. 751, 756 (1998) for the proposition that "[t]ribal immunity is a matter of federal law and is not subject to diminution by the states" (alteration omitted)). Morever, a tribe is also free to waive its sovereign immunity; however, such a waiver must be "express and unequivocal." *R & R Deli, Inc. v. Santa Ana Star Casino*, 2006-NMCA-020, ¶ 10, 139 N.M. 85, 128 P.3d 513. "Because a tribe need not waive immunity at all, it is free to prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted." *Id.* (internal quotation marks and citation omitted). Entities under tribal control are also extended sovereign immunity to the same extent as the tribe itself. *Sanchez*, 2005-NMCA-003, ¶ 6.

{22} State-tribal compacts are contracts, subject to the rules of contract interpretation. *See Gallegos*, 2002-NMSC-012, ¶ 30. As a result, a court's duty in

11

interpreting and construing a state-tribal gaming compact is to ascertain the compacting parties' intent, and absent ambiguity, apply the plain meaning of the language employed in the compact. *See id.* We have therefore consistently declined to hold that a tribe waives sovereign immunity by implication. *See Antonio*, 2010-NMCA-077; *Martinez*, 2009-NMCA-087; *Sanchez*, 2005-NMCA-003; *see also Pena*, No. A-1-CA-29799, mem. op. at *1.

{23}    In *Sanchez*, an employee of Santa Ana Golf Club, Inc., an entity wholly owned and operated by Santa Ana Pueblo, sued the golf club for wrongful discharge and defamation after being fired upon informing her employer that she had been tested for Hepatitis C—for which she tested negative. 2005-NMCA-003, ¶¶ 1-2. The golf club raised tribal sovereign immunity in a motion to dismiss for lack of subject matter jurisdiction under Rule 1-012(B)(1), which the district court granted. *Sanchez*, 2005-NMCA-003, ¶ 2. On appeal, the employee argued that Santa Ana Pueblo's "voluntary participation in New Mexico's workers' compensation program" served as a waiver of sovereign immunity. *Id.* ¶ 17. Reasoning that the employee's claim relied on a theory of waiver by implication, this Court held that mere "activities such as participation in the state's workers' compensation program" do not establish a clear and unequivocal waiver of tribal sovereign immunity. *See id.* ¶¶ 7, 18.

12

{24}    This Court's holding in *Sanchez* was extended in our decision in *Martinez*, in which an injured employee of the Cities of Gold Casino, an entity wholly owned and operated by Pojoaque Pueblo, was allegedly terminated in retaliation for filing a workers' compensation claim. *Martinez*, 2009-NMCA-087, ¶ 1, 3. In response to the employee's filing of a workers' compensation claim, the casino filed a motion to dismiss, which included the defense of tribal sovereign immunity. *Id.* ¶¶ 10-11. The WCJ denied the casino's motion. *Id.* ¶¶ 15-16. On appeal, the employee argued that the defense of sovereign immunity was unavailable to the tribe because it had purchased a workers' compensation insurance policy. *Id.* ¶ 27. Following our logic in *Sanchez*, we reversed the WCJ, holding that by merely purchasing workers' compensation insurance, the casino did not "implicitly" waive sovereign immunity requiring it "to surrender to state court jurisdiction." *Martinez*, 2009-NMCA-087, ¶ 27.

{25}    *Martinez* also addressed the issue of whether the 2001 Indian Gaming Compact contained a waiver of sovereign immunity. *Id.* ¶ 26. In support of his claim that Section 4(B)(6) of the 2001 Indian Gaming Compact effected a waiver of sovereign immunity in workers' compensation claims, the employee referred to the language requiring tribal gaming enterprise employees be afforded workers' compensation benefits "at least as favorable as those provided by comparable state programs." *Id.*

13

(internal quotation marks omitted). We reasoned that to find a waiver of sovereign immunity from this language would also require this Court to implicitly find that the casino agreed to submit to the jurisdiction of the WCA. *See id.* In support of our conclusion, we pointed out that the compact language cited by the employee did not indicate "where jurisdiction might lie when and if a workers' compensation claim is filed by an employee" of the casino. *Id.* Accordingly, we held that Section 4(B)(6) of the 2001 Indian Gaming Compact did not contain a waiver of tribal sovereign immunity. *See id.*

{26} Similarly, in *Antonio*, an employee of Ski Apache, an entity wholly owned and operated by the Mescalero Apache Tribe, was injured in the course of his employment as a snowmaker. 2010-NMCA-077, ¶ 2. After availing himself of the tribe's workers' compensation program, administered by Tribal First, the employee still believed "that he was entitled to additional compensation" and filed a complaint with the WCA. *Id.* ¶ 3. The WCJ dismissed the employee's complaint for lack of subject matter jurisdiction. *Id.* ¶ 4. On appeal, the employee raised the same argument as the employee in *Martinez*—that Section 4(B)(6) of the 2001 Indian Gaming Compact waived the tribe's sovereign immunity with respect to workers' compensation disputes through its language requiring that the tribe provide its employees with workers' compensation benefits "at least as favorable as those provided by

14

comparable state programs[.]" *Antonio*, 2010-NMCA-077, ¶ 15. Relying on our reasoning in *Sanchez* and *Martinez*, we reaffirmed that Section 4(B)(6) of the 2001 Indian Gaming Compact does not effect a waiver of tribal sovereign immunity. *See Antonio*, 2010-NMCA-077, ¶¶ 15, 17, 20; *see also Pena*, No. A-1-CA-29799, mem. op. ¶ 4 (same).

{27} *Sanchez*, *Martinez*, and *Antonio* do not control. In those cases, the employees all relied upon theories of waiver of tribal sovereign immunity by implication—whether by voluntary participation in WCA proceedings, purchasing workers' compensation insurance, or under Section 4(B)(6) of the 2001 Indian Gaming Compact.

{28} In contrast, here Worker's argument relies on Section 4(B)(6) of the 2015 Indian Gaming Compact, which expressly provides that employees of Isleta Pueblo's gaming enterprises "shall [be] afford[ed] . . . an impartial forum such as (but not limited to) the Tribe's tribal court" and a judicial or administrative proceeding for appeals from adverse workers' compensation determinations in "which no defense of tribal sovereign immunity would be available[.]" Worker asserts this is an express and unequivocal waiver of tribal sovereign immunity. This language materially changed the substance and operation of the compact and it was not in effect in *Martinez* or *Antonio*, which construed Section 4(B)(6) of the 2001 Indian Gaming Compact.

15

Therefore, the question of whether Section 4(B)(6) of the 2015 Indian Gaming Compact contains an express and unequivocal waiver of tribal sovereign immunity is one of first impression. Thus, *Sanchez*, *Martinez*, and *Antonio* do not govern in this case, and we proceed to analyze the 2015 Compact language to determine whether it constitutes an express and unequivocal waiver of tribal sovereign immunity.

{29}     There is no issue about whether Section 4(B)(6) of the 2015 Indian Gaming Compact is ambiguous on its face. We therefore proceed to construe the ordinary and usual meaning of the language employed in the 2015 Compact. *See ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844 (holding that where a contract is unambiguous, "the words of the contract are to be given their ordinary and usual meaning" (alteration, internal quotation marks, and citation omitted)). Section 4(B)(6) of the 2015 Indian Gaming Compact sets forth an express and unequivocal waiver of sovereign immunity. Section 4(B)(6) of the 2015 Compact expressly states that "appeal[s]" from "adverse [workers' compensation] determination[s]" by Isleta Casino's insurer "shall be decided . . . in an administrative or judicial proceeding . . . as to which no defense of tribal sovereign immunity would be available[.]"

{30}     Isleta Casino denies that its workers' compensation program does not comply with Section 4(B)(6), and further, assuming Isleta Pueblo has failed to adopt laws as required by the compact, Isleta Casino argues that such a failure can only be remedied

16

by the State of New Mexico, as a party to the contract. The WCJ failed to hear evidence or make any findings of fact on whether Isleta Pueblo has adopted laws requiring it to participate in a workers' compensation program as mandated by Section 4(B)(6). Therefore, notwithstanding that Section 4(B)(6) contains an express waiver of sovereign immunity, we are not able to determine, on the record before us, whether the waiver is operative. Under these circumstances, we would ordinarily remand the case directing the WCJ to hear and consider relevant evidence and make findings of fact on the question of immunity. *See South v. Lujan*, 2014-NMCA-109, ¶ 11, 336 P.3d 1000 (stating that where determination of jurisdiction depends on factual questions that are inadequately developed for appeal, we may remand the case to the district court to make findings of fact and conclusions of law). It is not necessary for us to do so in this case, because even if Isleta Casino has sovereign immunity, Worker has a right to pursue her workers' compensation claim directly against Hudson and its third-party administrator, Tribal First. However, if Worker still wishes to proceed against Isleta Casino in addition to the insurers, then the WCJ should hear evidence and make findings (and allow discovery, if he deems it advisable) on the immunity question.

**II.** **Worker May Pursue Her Workers' Compensation Claim Against Hudson and Tribal First, Notwithstanding Isleta Casino's Entitlement To Tribal Sovereign Immunity**

{31} Worker next argues that even if this Court "finds that Employer [Isleta Casino] may defend this workers' compensation claim on the basis of sovereign immunity, . . . [then] such a defense does not extend to non-tribal entities Hudson Insurance and Tribal First." In support of her argument, Worker relies on the 2012 Oklahoma State Supreme Court case *Waltrip v. Osage Million Dollar Elm Casino*, 2012 OK 65, 290 P.3d 741.

{32} Although counsel for Isleta Casino, Hudson, and Tribal First concede that neither Hudson nor Tribal First are tribal entities entitled to claim sovereign immunity, counsel contends that Isleta Pueblo's sovereign immunity effectively extends to the insurers of its tribal gaming enterprises. This argument, relies on a statement in *Gallegos*, 2002-NMSC-012, ¶¶ 42-48, that "New Mexico courts have specifically found[, under Rule 1-019 NMRA,] that tribal enterprises are indispensable parties in suits brought against tribal insurers and that independent claims cannot be sustained against a tribal insurer." As a result, Isleta Casino and Hudson assert that adoption of Worker's argument under *Waltrip* "directly conflicts with New Mexico law."

## A.  *Gallegos* Does Not Apply to This Case

{33}  In *Gallegos*, a visitor to the Camel Rock Gaming Center, an entity wholly owned and operated by the Pueblo of Tesuque (Tesuque), was injured when she was knocked down by a garbage container that blew into her because of a sudden gust of wind. 2002-NMSC-012, ¶ 3. At the time of the visitor's injury, the gaming center had an insurance policy in effect with Zurich American Insurance Company. *Id.* The visitor thereafter filed a common law tort action against Tesuque and other defendants seeking damages. *Id.* ¶ 4. The district court dismissed the case on the basis of tribal sovereign immunity. *Id.* The visitor proceeded to file a separate lawsuit against the gaming center's insurer, Zurich and other defendants, alleging, in pertinent part, breach of contract for failing to pay her medical expenses and insurance bad faith. *Id.* ¶ 5. Zurich responded by filing a Rule 1-019 motion to dismiss for failure to join an indispensable party—Tesuque, which enjoyed sovereign immunity. *Gallegos*, 2002-NMSC-012, ¶ 5. On appeal, our Supreme Court affirmed the district court, *id.* ¶ 37, citing federal precedent for the proposition that in actions involving contract disputes, the parties to the contract are indispensable parties. *Id.* ¶ 43.

{34}  The Court in *Gallegos* reasoned that the visitor's contract claims "would require that the court interpret the provisions of the insurance contract, as well as determine the duties and responsibilities under the insurance policy" of Tesuque,

19

Zurich, and the visitor "in relation to each other" and "as understood by the contracting parties." *Id.* ¶ 43. "The propriety or impropriety of Zurich's performance under the insurance policy[,]" the Court stated, was of "substantial interest" to Tesuque, which "paid for the insurance protection in question and on whose behalf Zurich acts." *Id.* Accordingly, the Court held that Tesuque was an indispensable party to the visitor's case against Zurich. *Id.* ¶ 47.

{35} *Gallegos* does not apply under the facts and circumstances of this case. In *Gallegos*, the visitor's claim against Zurich was a common law civil action, alleging breach of contract for failing to pay her medical expenses and insurance bad faith. *Id.* ¶ 38.

{36} Here, Worker's case was filed as a statutory workers' compensation claim. From these facts it follows that the procedural issues that warranted dismissal of the visitor's claim against Zurich in *Gallegos* on grounds of failure to join an indispensable party—Tesuque—are not presented in Worker's case. Specifically, in *Gallegos*, the visitor's breach of contract and insurance bad faith claims against Zurich would have required the Court to interpret and determine the duties created under the insurance policy executed between Zurich and the gaming center in relation to the visitor. Therefore, the Court held that based on the principle that in actions involving contract disputes, the parties to the contract at issue are indispensable

parties, the gaming center, which the district court determined enjoyed tribal sovereign immunity in relation to the visitor's claim, was an indispensable party without which the visitor's case against Zurich could not go forward.

{37}     Here, in contrast, interpretation of the duties created under the workers' compensation insurance policy executed between Isleta Casino and Hudson is not at issue. Rather, to succeed on the merits in her claim for workers' compensation benefits before the WCA, Worker need only establish that at the time of her accident: (1) Isleta Casino had complied with workers' compensation laws regarding obtaining insurance; (2) Worker was performing "service arising out of and in the course of employment"; and (3) her injury was "proximately caused by accident arising out of and in the course of" her employment and was "not intentionally self-inflicted." NMSA 1978, § 52-1-9 (1973). Additionally, workers' compensation law, unlike the common law of contract, generally requires that both a worker's employer and his or her employer's insurer shall be directly and primarily liable to the worker to pay to him or her work injury benefits where the aforementioned elements of a workers' compensation claim are satisfied. *See* NMSA 1978, § 52-1-4(A), (C) (1990). As a result, even assuming Isleta Casino was determined to enjoy tribal sovereign immunity in the context of Worker's workers' compensation claim, Isleta Casino is not an indispensable party without which Worker's claim cannot go forward under

21

*Gallegos*—as both Isleta Casino and Hudson may be directly and primarily liable to her for work injury under workers' compensation law.

{38}     Concluding that *Gallegos* does not apply in this case, we proceed to consider Worker's claim that we should adopt the reasoning in the Oklahoma Supreme Court's decision in *Waltrip* and hold that she may pursue her workers' compensation claim against Hudson and Tribal First in the WCA notwithstanding that Isleta Casino may be immune.

**B.      *Waltrip*'s Rationale Is Persuasive and Worker May Pursue Her Claim for Workers' Compensation Benefits Against Hudson and Tribal First**

{39}     In *Waltrip*, an employee of the Osage Million Dollar Elm Casino, wholly owned and operated by the Osage Nation, fell on a patch of ice while on the job working as a surveillance supervisor at the casino. 2012 OK 65, ¶¶ 2-3. At the time of the accident, the casino carried an insurance policy issued by Hudson Insurance Company—administered by Tribal First. *Id.* ¶ 2. Although the casino's insurance policy with Hudson contemplated adjudication of workers' compensation claims in Tribal Court, the Osage Nation had not enacted an ordinance governing workers' compensation. *Id.* ¶ 9. The employee proceeded to file a claim in the Oklahoma Workers' Compensation Court, seeking workers' compensation benefits. *Id.* ¶ 4. The Workers' Compensation Court, however, dismissed the employee's claim based on the casino and Hudson's assertion of tribal sovereign immunity as a defense. *Id.*

22

Relying on a section of the Oklahoma Workers' Compensation Act titled "Estoppel from denying employment"[1] and the common law rights in contract of third-party beneficiaries, the court determined that although the casino enjoyed tribal sovereign immunity based on its status as a tribal enterprise, Hudson Insurance—a non-tribal Delaware corporation—was not beyond the jurisdiction of the state's Workers' Compensation Court. *Id.* ¶ 19.

{40} The *Waltrip* court's reasoning was as follows. Per the estoppel statute, the employee had been conferred third-party beneficiary status under the insurance policy entered into by the casino and Hudson. *Id.* The purpose of the estoppel statute was to ensure "that an insurer who accepts premiums should not evade liability for benefits due under compensation law" notwithstanding an insured's status as a sovereign entitled to immunity from suit. *Id.* ¶ 7 (internal quotation marks and citation omitted). Hudson "knew or should have known" that the Osage Nation had put no workers' compensation ordinance in place, but still "[willfully] and intentionally collect[ed] premiums from the tribal enterprise[, the casino,] for providing workers'

---

[1] Okla. Stat. Ann. tit. 85A, § 117 (West 2014) (providing that "[e]very employer and insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a workers' compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the workers' compensation law by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such employee was employed by the employer").

compensation . . . believing that it w[ould] step into the shoes of the Tribe and receive the benefit of the Tribe's sovereign immunity." *Id.* ¶ 12. To permit an insurer to evade any liability because of the status of an employer that it insures would "render the [insurance] policy provisions illusory and inane. Insurer would possess the ability to arbitrarily deny claims and yet evade any judicial review in any tribal, federal, or state court. It would leave no avenue for an injured worker of the tribal enterprise to compel [i]nsurer's performance under the policy in a judicial forum." *Id.* ¶ 15 (emphasis omitted). As a result, without a tribal ordinance governing workers' compensation and establishing the law and a forum for adjudication of employees' workers' compensation claims, the state Workers' Compensation Court could exercise jurisdiction over Hudson and Tribal First. *Id.* ¶ 19.

{41} The circumstances central to the court's decision in *Waltrip* are strikingly similar to those presented in this case. First, like the casino in *Waltrip*, Isleta Casino carried a workers' compensation insurance policy issued by Hudson and administered by Tribal First at the time of Worker's work injury. Like the arrangement between the Osage Nation and Hudson in *Waltrip*, the insurance policy in force between Isleta Casino and Hudson appeared to contemplate adjudication of Isleta Casino employees' workers' compensation claims in some forum. However, at the time that the *Waltrip* employee and Worker were injured, the Osage Nation and apparently Isleta Pueblo

24

had not adopted tribal ordinances governing workers' compensation. Upon the filing of workers' compensation complaints with the New Mexico WCA and Oklahoma Workers' Compensation Court, respectively, both Worker and the *Waltrip* employee's claims were dismissed on grounds of tribal sovereign immunity. And as was the case in *Waltrip*, Hudson and Tribal First knew or should have known that no Isleta Pueblo ordinance governing workers' compensation was in place. Yet Hudson and Tribal First still collected premiums from Isleta Pueblo contending, once again, that it would benefit from the Pueblo's sovereign immunity.

{42}     Second, Oklahoma's estoppel from denying employment statute, which is aimed at ensuring "that an insurer who accepts premiums should not evade liability for benefits due under compensation law" notwithstanding an insured's status as a sovereign entitled to immunity from suit, *Waltrip*, 2012 OK 65, ¶ 7 (internal quotation marks and citation omitted), is similar to Section 52-1-4(C). As referenced above, Section 52-1-4(C) requires that both an employer and the employer's workers' compensation insurer assume direct and primary liability to pay employees' "compensation and other workers' compensation benefits" where an employee's injuries are deemed compensable. Section 52-1-4 has also been construed by our Supreme Court as intended to notify a worker that their employer has complied with the insurance requirements of the Workers' Compensation Act, that the employer is

25

subject to the provisions thereof, and that the worker has conclusively accepted the provisions of the Workers' Compensation Act. *See Shope v. Don Coe Constr. Co.*, 1979-NMCA-013, ¶ 9, 92 N.M. 508, 590 P.2d 656.

{43}     Finally, New Mexico common law expressly recognizes that workers are third-party beneficiaries of workers' compensation insurance policies. *See Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶¶ 16, 20, 135 N.M. 397, 89 P.3d 69 (reaffirming that workers are "intended beneficiaries" of workers' compensation insurance policies); *Russell v. Protective Ins. Co.*, 1988-NMSC-025, ¶¶ 15-16, 107 N.M. 9, 751 P.2d 693 (recognizing that workers are third-party beneficiaries under workers' compensation insurance policies), *abrogated on other grounds by Cruz v. Liberty Mut. Ins. Co.*, 1995-NMSC-006, ¶¶ 7-10, 119 N.M. 301, 889 P.2d 1223; *Points v. Willis*, 1939-NMSC-041, ¶¶ 47, 50, 44 N.M. 31, 97 P.2d 374 (recognizing that workers and dependents of the worker are third-party beneficiaries of workers' compensation policies).

{44}     Based on the foregoing factual and legal similarities, we find *Waltrip* persuasive and adopt its rationale. Applying the *Waltrip* reasoning, we conclude that Worker is a third-party beneficiary to the workers' compensation insurance policy between Isleta Casino and Hudson (evidenced by the December 1, 2015, certificate of workers' compensation insurance filed with the WCA). Specifically, Isleta Casino

26

and Hudson intended for the employees of Isleta Casino, including Worker, to benefit from the rights and protections created under the policy in the event that they are injured on the job. Additionally, the filing of the certificate of workers' compensation insurance with the WCA rendered Hudson to being held directly and primarily liable to pay workers' compensation benefits as Isleta Casino's workers' compensation insurer, pursuant to Section 52-1-4(C). As a result, we likewise conclude, as the Oklahoma Supreme Court concluded in *Waltrip*, that allowing Hudson and Tribal First to deny Worker's claim in this case by hiding behind Isleta Pueblo's sovereign immunity renders the Pueblo's insurance policy illusory and inane and permits Hudson and Tribal First to arbitrarily evade judicial review of its determination in any forum.

{45}     Accordingly, we hold that: (1) Hudson and Tribal First, as Isleta Casino's workers' compensation insurer and third-party administrator, are proper parties to Worker's workers' compensation case; and (2) assuming Isleta Casino enjoys tribal sovereign immunity in this case, Worker may pursue her claim for work injury benefits in the WCA against Hudson and Tribal First.

**CONCLUSION**

{46}     For the foregoing reasons, we reverse and remand for further proceedings in Worker's workers' compensation case in the WCA in accordance with this opinion.

Additionally, on remand, Worker shall be permitted to amend her complaint to name Tribal First, as Hudson's third-party administrator, as a party to the case.

{47}    **IT IS SO ORDERED.**

_____
                        **MICHAEL E. VIGIL, Judge**

**WE CONCUR**


_____
**LINDA M. VANZI, Chief Judge**


_____
**EMIL J. KIEHNE, Judge**